Rutledge *v.* Daley's Blue Line Transfer Co.,
Appellant.

Argued March 1, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*James W. Scanlon,* for appellant.

No appearance was made or brief filed for appellee.

OPINION BY KELLER, P. J., April 13, 1943:

This is a close case; but after careful consideration we are of opinion that a proper construction of the provisions of the Workmen's Compensation Law relating to compensation for the *permanent loss* of certain members of the body, (clause (c) of section 306), justifies the order of the board refusing to terminate the compensation award for "permanent total disability".

The claimant sustained an injury on June 3, 1933, in the course of his employment with the defendant which required the amputation of both feet at points several inches below the knees. Thereafter two other amputations on each stump had to be performed successively and the medical testimony indicates that a further amputation of each will probably be necessary. Claimant has been fitted with artificial feet, and walks with difficulty, in a stooped position, with the aid of two canes.

The amendment of April 13, 1927, P. L. 186, to the Workmen's Compensation Act of 1915, P. L. 736, was in force at the date of the accident, and as so amended, section 306(c) read, *inter alia*: "For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: ......

"For the loss of a foot sixty-five per centum of wages during one hundred and fifty weeks ......

"For the loss of any two or more such members, ...... not constituting total disability, sixty-five per centum of wages during the aggregate of the periods specified for each ......

"Unless the board shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability to be

compensated according to the provisions of clause (a)."

Section 306(a) established the following schedule of compensation for injuries resulting in total disability: "For the first five hundred weeks after the seventh day of total disability, sixty-five per centum of the wages of the injured employe as defined in section three hundred and nine; but the compensation shall not be more than fifteen dollars per week nor less then seven dollars per week, and shall not exceed in the aggregate the sum of sixty-five hundred dollars ...... Nothing in this clause shall require payment of compensation after disability shall cease. Should partial disability be followed by total disability, the period of five hundred weeks shall be reduced by the number of weeks during which compensation was paid for such partial disability."

Under clause (c) of section 306, compensation is to be paid as therein provided for the permanent loss of the members specified, irrespective of actual disability or incapacity to labor (*Lente v. Luci,* 275 Pa. 217, 220, 119 A. 132; *Camizzi v. Fraim Lock Co.,* 151 Pa. Superior Ct. 3, 8, 29 A. 2d 425). This is a basic and fundamental principle inherent in that clause; and we see no intention in the provisions just above quoted, with reference to compensation for the loss of both hands or both arms or both feet or both legs or both eyes, that calls for a departure from that principle. The *permanent loss* of any of those members constitutes such a permanent injury or handicap to the employee's general earning power as to justify, in the opinion of the legislature, payment of compensation for the respective periods prescribed, irrespective of the *immediate* disability or incapacity to labor; and when the Act prescribed that the loss of both hands or both arms or both feet or both legs or both eyes "shall constitute total disability" as respects the payment of workmen's com-

pensation, "unless the board shall otherwise determine", it did not intend to *reduce* the compensation to be paid him to 300 weeks, the period payable for partial disability (clause (b) of section 306), merely because the permanently crippled employee actually *earned* some wages by his labors. The expression does not read, "to be compensated according to the provisions of clauses (a) and (b)", but only "according to the provisions of clause (a)". It was not inserted in order to *decrease* the compensation payable for total disability thus *determined and declared* by the act, but only to fix the *total* number of weeks compensation was to be paid and the maximum aggregate amount payable, so that any change of the act in those respects would automatically apply to this provision, without specially incorporating it in clause (c).

Otherwise, see what an unfair consequence might result. If this claimant had had both *legs* amputated at the knee, instead of a few inches below it, he would have been entitled to compensation for two hundred and fifteen weeks for the loss of each *leg,* or a total of four hundred and thirty weeks' compensation, irrespective of his incapacity to labor, and without any declaration in the Act that such injuries constituted total disability. But if the added paragraph providing that the loss of both legs should *constitute total disability,* to be compensated according to the provisions of clause (a), should be interpreted as appellant contends, his four hundred and thirty weeks of compensation aggregating $6,450, for the permanent loss of both legs, irrespective of total disability, would be cut to three hundred weeks or $4,500,if he was able to earn a few dollars a week.

The provision that the permanent loss of two feet, etc. "shall constitute total disability" was intended to *benefit* the injured employee not to *hurt* him. The act specifically declared that the effect of their permanent loss should be 'total disability', unless the board shall

otherwise determine; and this is so, for the purpose of the Act, irrespective of the fact that he may be able to earn some wages or salary in some special or unusual kind of work. The law properly took into consideration the permanently crippled condition of the employee which will exist and affect his earning power as long as he lives—perhaps, long after the expiration of the compensation period.

Clause (a) does provide that payment of compensation shall not be required "after disability shall cease", but this provision should not be applied to a situation where the Act has expressly declared that, *for the purpose of determining the amount of compensation payable,* such *permanent loss shall constitute total disability.* It refers to cases where total disability has resulted from injuries, other than the permanent loss of members of the body, which may be ameliorated or cured by time and treatment. The disabling effects caused by the amputation of two feet, etc., are permanent and do not cease or change with lapse of time; and when declared by the legislature to constitute total disability, it necessarily remained so, at least until determined otherwise by the board.

The admitted facts show that appellant's present contention is in the nature of an afterthought; for at the time of filing its petition to terminate the award it had already paid the claimant compensation at $15 a week—before his injury he had earned $35 a week—for three hundred and sixty-six weeks from June 10, 1933, or sixty-six weeks longer than claimant would have been entitled to if he were limited to three hundred weeks compensation, as representing the aggregate of an award of one hundred and fifty weeks for the loss of each foot, or three hundred weeks compensation, as representing an award for partial disability.

The generosity of the employer, in this particular case, in paying claimant the same wages or salary after

his accident as he had received before, irrespective of the fact that the work done by him was entirely different and of a very limited nature and could have been done by an untrained girl for $15 a week,[1] does not affect legal principles applicable in situations where the legislature has declared that the permanent loss of two feet, etc., *shall constitute total disability,* unless the board shall determine otherwise. The board has not determined otherwise in this case. In fact it has specifically ruled in consonance with the legislative declaration.

Judgment affirmed.

_____

[1] The evidence in the record justifies the following excerpt from the opinion of the court below: "The board, however, reviewed the evidence and found that the defendant had failed to sustain the burden placed upon it. We believe that this conclusion should be affirmed. While the board refers to the wages of the claimant as a 'gratuity', we are of the opinion that what was intended was that the employment itself was gratuitous, rather than the wages. The fact that the employee performs some services that are of value to the employer does not change the situation. It is undisputed that the work of this employee could be done by a girl at a small salary. We believe that it is clear from all the evidence in the case that any other employer than this one would prefer an able-bodied girl to a cripple such as this claimant."