## Zimmerman v. Pennsylvania Farm Bureau Cooperative Assn.

*Lawrence E. Stengel,* for claimant.

*Austin E. McCollough* and *E. S. Lawhorne,* for defendants.

JOHNSTONE, J., January 29, 1958.—This is an appeal from a decision of the workmen's compensation board dismissing the termination petition of the Commonwealth of Pennsylvania, State Workmen's Insurance Fund, custodian of the Second Injury Reserve Fund. Claimant, L. Henry Zimmerman, received an injury to his left eye on May 4, 1951, during the course of his employment and the injury resulted in the loss of the use of his left eye. By an agreement between claimant, his employer and the employer's insurance carrier, approved by the Bureau of Workmen's Compensation, claimant was to receive compensation at the rate of $25 per week for 125 weeks beginning May 12, 1951. On February 24, 1954, claimant filed a petition to review the final receipt given under the above mentioned agreement. The petition to review averred that by reason of claimant having lost the vision in his right eye before the accident on May 4, 1951, which resulted in the loss of his left eye, he was totally disabled. The referee found as a fact that claimant was totally disabled and on May 10, 1954, made an award to claimant for compensation at the rate of $25 per week for an additional 375 weeks and directed that the award be paid out of the Second Injury Reserve Fund by the Commonwealth of Pennsylvania.

On November 1, 1956, the State Workmen's Insurance Fund, custodian of the Second Injury Reserve Fund, filed its petition for a termination of the award and averred that claimant had resumed work. An answer was filed to this petition stating that while

claimant is working, his eyesight is such that he has no useful vision. A hearing was held on the petition and answer and the testimony discloses that claimant has 20/400 minus vision in his left eye and that there has been no change in his vision since the hearing of February 25, 1954, upon which was based the award of total disability. Claimant testified that he started to work for Woolworth's on March 2, 1956, and has worked continuously since that date, receiving for his labors "around $39 a week." Prior to claimant's injury and loss of his vision, he was a millwright and now his duties consist of working in the bakeshop at Woolworth's putting on and taking trays off an elevator, helping the cook carry pots and sometimes working in the stockroom. There is another employe with claimant at all times directing him what to do and where to place the object he is carrying. The referee found as a fact that claimant was still totally disabled and concluded as a matter of law that compensation is due claimant for the balance of the 500-week period remaining unpaid.

An appeal from the findings and conclusions of the referee was taken to the workmen's compensation board. The board filed its opinion in which it affirmed the findings and conclusions of the referee and dismissed the appeal of the State Workmen's Insurance Fund. The appeal by the Commonwealth of Pennsylvania to this court followed and exceptions were filed to the finding that claimant was totally disabled and in refusing to suspend compensation payments to claimant upon proof that he was earning wages.

The Act of May 29, 1945, P. L. 1186, sec. 1, added section 306.1 to The Workmen's Compensation Act of June 2, 1915, P. L. 736. This amendment, 77 PS §516, to the act provides: "If an employe, who has incurred (through accident or otherwise) permanent partial

disability, through the loss, or loss of use of, one hand, one arm, one foot, one leg or one eye, incurs total disability through a subsequent injury, causing loss, or loss of use of, another hand, arm, foot, leg or eye, he shall be entitled to additional compensation as follows: After the cessation of payments by the employer for the period of weeks prescribed in Clause (c) hereof, for the subsequent injury, additional compensation shall be paid during the continuance of total disability, at the weekly compensation rate applicable for total disability, for the remainder of the five hundred week period provided in Clause (a) hereof."

It was under this added section of the act that claimant was awarded additional compensation for 375 weeks, or a total of 500 weeks. It was also by virtue of this added section to the act that the additional compensation payments were directed to be paid by the Commonwealth. It is to be noticed that section 306.1 provides for the payment of the additional compensation "during the continuance of total disability." The question to be decided here is whether claimant is entitled to the additional compensation for the remainder of the 500 weeks upon a showing that he is now employed and earning wages of approximately $39 per week.

The answer to the question involved in this case depends upon the meaning of the phrase "total disability" intended by the legislature. The Commonwealth in this case does not contend that claimant has not lost the permanent use of his eye, and this according to section 306 (c) of the act shall be considered as the equivalent of the loss of the eye. No attempt was made by the Commonwealth to show that claimant had any useful vision in his eye, but merely was content to show that he was in fact earning wages. In an effort to determine the intent of the legislature in using the

phrase "total disability," we have examined the act to determine whether this phrase had previously been used and what meaning had been attributed to it.

In section 306(c) of the act, 77 PS §513, we find this provision: "Unless the board shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability to be compensated according to the provisions of clause (a)."

Under the Statutory Construction Act of May 28, 1937, P. L. 1019, the courts may be guided in ascertaining the intention of the legislature by presuming that when a court of last resort has construed the language used in a law, the legislature in subsequent laws on the same subject matter intended the same construction to be placed upon such language: 46 PS §552(4).

In Buhl's Estate, 300 Pa. 29, the Supreme Court stated, at page 32: "Where in a later Act the legislature uses the same language as in a prior cognate statute, which has been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been when considering the earlier statute: Spangler's Est., 281 Pa. 118; Bell v. Bell, 287 Pa. 269."

It would, therefore, appear that if our appellate courts have construed the meaning of "total disability" as used by the legislature in section 306(c), then the same meaning should be attributed to the same phrase used by the legislature in section 306.1.

The facts in the case of Lente v. Luci, 275 Pa. 217, are similar to the facts in the present case, but the decision was made prior to the passage of the Act of 1945, sec. 306.1. In that case claimant lost an eye from an injury in the course of his employment and the sight of his other eye had been destroyed before

his employment began. An attempt was made to recover for total disability under section 306 (c), but the court stated that although claimant had the sympathy of the court, an act of assembly was being construed and recovery was limited to the exclusive compensation provided in section 306 (c).

The court stated: "Paragraph (c) fixes the total compensation for permanent injuries to certain parts of the body. Under it must be considered all disability 'resulting from' or related to permanent injuries, and the compensation for such injuries shall be 'exclusively' as therein provided. It will be noted the governing feature in this paragraph is a permanent injury, while in the former paragraphs the governing feature is a disability from an injury. In paragraph (c), the right to compensation for the consequential feature 'all disability,' no matter in what degree, is measured by the extent of the injury, i.e., so much money during a given period for the loss of a hand, arm, foot, leg or eye, respectively. In other words, this legislative mandate fixed the amount to be paid in such cases without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all."

The court stated further: ". . . the legislature, when considering the compensation to be paid on their [loss of a hand, arm, foot, leg or eye] account, has seen fit to place them in a class by themselves; in doing so, it did not intend the idea of disability or incapacity to be the moving feature; nor does their loss entitle the person injured to any other consideration, except as therein expressed. The compensation mentioned is restricted by precise language, regardless of the fact that a permanent injury might otherwise affect capacity to work. The standard thus fixed is in the nature of compensation for the damage resulting from the loss of

the members there named, without regard to personal capacity to labor or loss of earning power: Kerwin v. American Express Co., 273 Pa. 134."

In Rutledge v. Daley's Blue Line Transfer Co., 152 Pa. Superior Ct. 118, claimant suffered an injury in the course of his employment which required the amputation of both feet at points several inches below the knees. Claimant was fitted with artificial feet and was gainfully employed. In holding that plaintiff was entitled to recover for the exclusive compensation provided in section 306 (c), the court stated:

"Under clause (c) of section 306, compensation is to be paid as therein provided for the permanent loss of the members specified, irrespective of actual disability to labor (Lente v. Luci, 275 Pa. 217, 220, 119 A. 132; Camizzi v. Fraim Lock Co., 151 Pa. Superior Ct. 3, 8, 29 A. 2d 425). This is a basic and fundamental principle inherent in that clause; and we see no intention in the provisions just above quoted, with reference to compensation for the loss of both hands or both arms or both feet or both legs or both eyes, that calls for a departure from that principle. The permanent loss of any of these members constitutes such a permanent injury or handicap to the employe's general earning power as to justify, in the opinion of the legislature, payment of compensation for the respective periods prescribed, irrespective of the immediate disability or incapacity to labor; and when the Act prescribed that the loss of both hands or both arms or both feet or both legs or both eyes 'shall constitute total disability' as respects the payment of workmen's compensation, 'unless the board shall otherwise determine,' it did not intend to reduce the compensation to be paid him to 300 weeks, the period payable for partial disability (clause (b) of section 306), merely because the permanently crippled employe actually

earned some wages by his labors. . . . The provision that the permanent loss of two feet, etc., 'shall constitute total disability' was intended to benefit the injured employe, not to hurt him. The Act specifically declared that the effect of their permanent loss shall be 'total disability,' unless the Board shall otherwise determine; and this is so, for the purpose of the Act, irrespective of the fact that he may be able to earn some wages or salary in some special or unusual kind of work. The law properly took into consideration the permanently crippled condition of the employe which will exist and affect his earning power as long as he lives—perhaps, long after the expiration of the compensation period."

Our appellate courts have consistently held that the losses provided in section 306(c) are exclusive of all other benefits and claimant is entitled to the compensation provided regardless of whether incapacity is total, partial or none at all. In Camizzi v. E. T. Fraim Lock Co., 151 Pa. Superior Ct. 3, 8, the court stated: "Nor, of course, does the fact that an employe entitled to compensation under that section is earning as much as, or even more than, at the time of the injury have any bearing upon any issue arising under that section."

"Total disability," for workmen's compensation purposes, occurs when a claimant loses both hands or both arms or both feet or both legs or both eyes, unless the board shall otherwise determine. No such determination has been made in this case. This has been the meaning ascribed to the phrase "total disability" when the permanent loss suffered is one enumerated in section 306(c). That was the meaning of the phrase, as construed by our appellate courts, at the time the legislature passed section 306.1 and we conclude that the legislature intended the phrase to have the same construction when it used the same words in section 306.1

as it had in section 306.(c). The cases relied on by appellant in this case, such as Earley v. Phila. & Reading Coal & Iron Co., 144 Pa. Superior Ct. 301, and Leaver v. The Midvale Co., 162 Pa. Superior Ct. 393, do not involve permanent injuries covered by section 306(c) and are not apposite to the facts here. If the present claimant had not suffered a permanent injury covered by section 306(c), in our opinion the same construction given by the appellate courts in such cases would be binding when construing the meaning of "total disability" as used in section 306.1, and the cases cited by appellant would apply. However, we are bound by the construction given the words by our appellate courts when, as here, the disability arises by reason of one of the permanent losses specifically enumerated in section 306.(c).

The undisputed fact is that claimant has lost the use of both eyes. He is, therefore, totally disabled under the provisions of section 306(c) and the fact that he is gainfully employed does not affect his right to the compensation provided in the act. Claimant's loss of both eyes will continue with him, perhaps for a long time, after the expiration of the 500 weeks' period and we do not think the legislature intended to penalize him because he had the industry and ambition to find employment. It is our firm opinion that when the legislature used the words, "during the continuance of total disability," it intended that those suffering from the loss of both hands or both arms or both feet or both legs or both eyes were to be considered totally disabled, unless the board should otherwise determine, and were to receive compensation as provided in such cases.

And now, October 25, 1957, for the reasons stated herein, the appeal of the Commonwealth of Pennsylvania is dismissed and the award to L. Henry Zimmerman is affirmed.