**ALLEGHENY POWER SERVICE CORPORATION and Acordia Employer Service, Inc., Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (COCKROFT), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 7, 2008.

Decided July 22, 2008.

Gary M. Scoulos, Pittsburgh, for petitioners.

Timothy Conboy, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Allegheny Power Service Corporation and Acordia Employer Service, Inc. (together, Employer) petition for review of the January 8, 2007, order of the Workers' Compensation Appeal Board (WCAB) that affirmed the order of a workers' compensation judge (WCJ) dismissing Employer's petition to modify benefits payable to David Cockroft (Claimant). We affirm.

On January 19, 1995, Claimant sustained severe electrical burns to both of his upper extremities when he made contact with a

charged electrical line. As a result of the injury, Claimant's right arm was amputated just below the elbow. After multiple surgical procedures, Claimant underwent revision of the right elbow stump with a fibula bone graft from his left leg. He also had a major flap coverage of the stump with a muscle taken from his shoulder. Claimant was fitted with a myoelectric artificial arm about one year later. However, due to the very short stump at the right elbow, Claimant has no leverage in the artificial arm, and there also is insufficient tissue on the stump to allow for an adequate fit of the prosthesis. Claimant's left hand also was badly injured, and the third and fourth fingers of that hand were removed. Because of damage to his tendons, Claimant's left index finger was relocated to the site of the fourth finger. However, this relocation was unsuccessful, and Claimant has virtually no use of this transplanted finger.

Pursuant to a notice of compensation payable, Claimant received total disability benefits from January 1995 through May 1997. On May 19, 1997, Claimant returned to work with Employer in a restricted duty position. Thereafter, Employer unilaterally ceased payment of Claimant's benefits, and Claimant filed a penalty petition and a challenge petition seeking a reinstatement of total disability benefits. The WCJ determined that the matter was governed by section 306(c)(23) of the Workers' Compensation Act (Act),[1] which creates a statutory presumption of total disability for individuals who suffer specified bilateral losses: *"Unless the board shall otherwise determine,* the loss of both hands or both arms or both feet or both legs or both eyes *shall* constitute total disability, to be compensated according to the provisions of [section 306(a) of the Act, 77 P.S. § 511]." 77 P.S. § 513(23) (emphasis added). Based on Employer's stipulation that Claimant suffered a loss of such severity as to come within section 306(c)(23) of the Act, the WCJ concluded that the statutory provision obligated Employer to pay total disability benefits unless the WCAB determines otherwise. Accordingly, the WCJ reinstated Claimant's benefits and awarded Claimant penalties and attorney's fees. (May 4, 2001, decision, WCJ's Findings of Fact, No. 7, R.R. at 7a.)

Employer then filed a modification petition with the WCAB,[2] seeking a determination that Claimant was not totally disabled within the meaning of section 306(c)(23). Employer asserted that Claimant's specific losses are compensable exclusively under sections 306(c)(1) (hand) and 306(c)(2) (forearm) of the Act, 77 P.S. §§ 513(c)(1) and (c)(2), so that Claimant is entitled to an aggregate of 705 weeks of total disability compensation.[3] Alternatively, Employer requested a modification of Claimant's benefits in accordance with his actual earnings. At the WCAB's request, the matter was assigned to a WCJ.[4]

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513(23).

2. Employer first filed for modification on June 11, 2001, but used the incorrect form. Employer filed the petition at issue on February 15, 2002.

3. Although Employer continues this assertion on appeal, we note that Employer has waived this issue by stipulating that Claimant's injuries fall within section 306(c)(23) of the Act.

(May 4, 2001, decision of the WCJ, WCJ's Findings of Fact, No. 7, R.R. at 7a.)

4. The WCAB issued a *per curiam* order referring the case to the Workers' Compensation Bureau and requesting that the Bureau assign the matter to a WCJ for the purpose of holding evidentiary hearings and rendering all necessary findings of fact and conclusions of law.

In support of its petition, Employer presented the deposition testimony of Steven E. Kann, M.D., a board-certified orthopedic surgeon who examined Claimant on April 13, 2000. After providing details of his physical examination of Claimant, Dr. Kann opined that Claimant has markedly limited functional use of his left upper extremity. He stated that Claimant is capable of using his thumb and small digit, which have normal sensation, only for gross positioning activities. Dr. Kann testified that Claimant could not use his left upper extremity for anything but sedentary duty, which would include no lifting of objects greater than ten pounds and no forceful repetitive gripping and grasping with the left hand. Dr. Kann also opined that Claimant had a loss greater than ninety per cent of the use of his left hand. He indicated that Claimant would no longer be able to brush his teeth, cut meat or twist a very stiff doorknob. Dr. Kann further stated that Claimant probably could not pick up a pencil, and, because Claimant would be writing with his non-dominant hand, his writing would not be legible even if a specially adapted pencil were provided. However, he testified that Claimant could use an ordinary telephone and could drive an automobile if the steering wheel included modifications. (WCJ's Findings of Fact, No. 7.)

In further support of its petition, Employer presented the testimony of Janet Winschel, an employment consultant. Winschel did not personally evaluate Claimant but based her opinions on the independent medical evaluation report completed by Dr. Kann. Relying on that report and Claimant's previous employment history, Winschel determined that Claimant is a highly-skilled individual and that there are positions within the general labor market in which he could be employed, including project coordinator, dispatcher, meter reader, expediter, material coordinator and machinery manager. However, on cross-examination, Winschel acknowledged that the jobs listed in her report are not actual jobs that she located in Claimant's geographic area but, instead, are statistical job categories that may be available to Claimant in the state of Pennsylvania. Winschel agreed that she did not go to any particular job site and view the job being performed or talk to the employer regarding the job requirements. She also admitted that she has visited job sites in the past and, after doing so, has eliminated a position because it goes beyond the classification for which the particular job was listed. Winschel further admitted that she could not state with any certainty what each of the jobs she listed actually paid. (WCJ's Findings of Fact, No. 8.)

In rebuttal, Claimant presented the deposition testimony of Thomas W. Cowan, M.D., a board-certified orthopedic surgeon who examined Claimant on August 8, 2002. Dr. Cowan testified that Claimant has suffered a permanent loss of his right arm from below the elbow and that he has no leverage in his artificial arm. Dr. Cowan also acknowledged that Claimant has very limited ability to perform work. Dr. Cowan stated that, although Claimant is able to use a computer, he does so by pressing one key at a time, which is a very slow and laborious process. Dr. Cowan testified that Claimant struggles as a right-handed person with no right hand or lower arm, and he testified further that Claimant is poorly coordinated with his left hand, which is severely functionally disabled. Based upon his findings, diagnosis and evaluation of Claimant, Dr. Cowan opined within a reasonable degree of medical certainty that Claimant is not employable. Dr. Cowan testified that Claimant's inability to use either of his upper extremities functionally rendered Claimant unemploy-

able for all practical purposes, noting that Claimant cannot even fill out a job application. Dr. Cowan had reviewed the positions identified by Winschel as suitable, and he explained in detail why Claimant would not be able to perform these jobs. Dr. Cowan stated that he was surprised that Claimant was working at all, and he believed that Claimant was employed only because he was able to move into a special position with the same employer in a job that he was familiar with. Dr. Cowan also found that Claimant is profoundly impaired from performing activities of ordinary daily living. He stated that even with the use of the artificial arm to help stabilize things, Claimant is unable to button his shirt or pants, cut his food, tie his shoes or write, except for limited, slow, barely legible printing. (WCJ's Findings of Fact, No. 5.)

Claimant also offered the August 6, 2003, deposition testimony of Sharon Lee Heinlein, a certified rehabilitation counselor and certified case manager. Heinlein met with Claimant for about ninety minutes and reviewed his medical records, the reports of Drs. Kann and Cowan and the report of Winschel. In Heinlein's professional opinion, if Claimant were unable to continue working at the modified position with Employer, he would be unemployable. Heinlein testified that both Dr. Kann and Dr. Cowan would limit Claimant to sedentary duty *with virtually no use of his right or left hands,* and she explained that most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand and finger actions. In fact, she stated that, in sedentary positions, virtually every task involves the use of one's hands.

Heinlein testified that a sedentary job clearly is not appropriate for Claimant because, as Dr. Kann reported, Claimant cannot perform repetitive gripping and grasping with his left hand. Heinlein analyzed the positions that Winschel suggested were appropriate for Claimant and detailed the reasons why Claimant is unable to perform each position. She indicated that it might be possible to identify a few jobs that Claimant could perform if modifications were made, but she stated that Claimant would have to compete against others without disabilities in order to secure any such position. Heinlein also testified that Claimant is able to work with Employer only because he is familiar with its services and because Employer has made modifications that permit Claimant to work. She stated that similar positions with other employers require much more physical activity at a much faster pace. (WCJ's Findings of Fact, No. 6.)

The WCJ accepted the testimony of Dr. Cowan and Heinlein as credible, and he rejected Winschel's testimony that Claimant is otherwise employable as "ludicrous." (WCJ's Findings of Fact, No. 9.) Relying on *Symons v. National Electric Products, Inc.,* 414 Pa. 505, 200 A.2d 871 (1964) and *Department of Labor and Industry, Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (Snyder),* 699 A.2d 1367 (Pa.Cmwlth.1997), *appeal denied,* 550 Pa. 710, 705 A.2d 1311 (1998), the WCJ found that Claimant remains totally disabled under section 306(c)(23) of the Act[5] and concluded that Employer is not entitled to credit for Claimant's post-injury earnings.[6]

5. In his Findings of Fact, No. 9, the WCJ found that Claimant "will never again be able to button his own shirt or zip his own pants, much less use his remaining hand to accomplish work in any functionally efficient manner."

6. The claimant in *Snyder* already was legally blind in his left eye, as a result of a childhood injury, when a work injury resulted in the loss of the lens in his right eye. After receiving specific loss benefits for the loss of use of his right eye under section 306(c), the claimant

Employer appealed the dismissal of its modification petition to the WCAB, which affirmed the WCJ's decision.[7] The WCAB first rejected Employer's arguments that the WCJ's findings were not supported by substantial evidence. Next, addressing Employer's contention that the WCJ capriciously disregarded evidence of Claimant's earning capacity, the WCAB concluded that a claimant's earning power is not appropriately considered in awards rendered under section 306(c) of the Act, citing *Faulkner Cadillac v. Workers' Compensation Appeal Board (Tinari)*, 831 A.2d 1248 (Pa.Cmwlth.2003) (holding that the economic consequence of a specific loss under section 306(c) has no bearing on the right to compensation for that injury), *appeal denied*, 579 Pa. 705, 857 A.2d 680 (2004), and *Shoop v. Chambersburg Baking Company*, 189 Pa.Super. 20, 149 A.2d 179 (1959) (holding that, under section 306(c), fortunate circumstance does not affect a claimant's right to compensation for the loss of both legs). Finally, the WCAB relied on the discretionary authority provided to it by section 306(c)(23) and determined that Claimant remains totally disabled and is entitled to continuing benefits.

On appeal to this court,[8] Employer argues that the WCAB erred in inter-

---

sought additional benefits from the Subsequent Injury Fund (Fund) pursuant to section 306.1 of the Act, added by section 1 of the Act of May 29, 1945, P.L. 1186, *as amended*, 77 P.S. § 516. Section 306.1 of the Act allows an employee who becomes totally disabled following a work-related specific loss of one hand, arm, foot, leg or eye after having suffered a similar previous loss (even non-work-related) to receive additional compensation from the Fund "during the continuance of total disability." 77 P.S. § 516.

The court in *Snyder* upheld the WCAB's award of total disability benefits, even though the claimant was earning wages. The court held that the presumption of total disability for two work-related losses under section 306(c)(23) applies equally as well to the bilateral losses compensable under section 306.1, where the first loss need not be work-related, so that *actual* total disability is not required for an award of such benefits. The court then interpreted the decision in *Symons* as *requiring* the WCAB to apply the statutory presumption set forth in section 306(c)(23), unless the claimant is earning more than his pre-injury wage. Thus, the court affirmed the determination that the claimant was entitled to total disability benefits. The court also determined that the WCAB properly awarded a credit to the employer for the claimant's earned wages, reasoning that section 306.1 of the Act was not intended to allow an injured employee to "double-dip" by receiving both total disability benefits and full wages.

In denying Employer credit for Claimant's earnings in the present matter, the WCJ relied

on the significant factual distinctions between *Snyder* and this case, including the facts that: 1) the claimant in *Snyder* did not lose vision in both eyes due to the work-related injury; 2) the loss of vision that the claimant suffered in *Snyder* was correctable, whereas no such possibility exists here; and 3) the claimant in *Snyder* was employable following his work injury and was able to find employment with an employer other than his pre-injury employer.

We believe more important is the legal distinction that, unlike compensation for *lost wages* under section 306.1 of the Act, specific loss benefits payable under section 306(c) of the Act are recognized as compensation for the *loss of use* of designated body parts, which may be received concurrently with full wages or partial or total disability benefits stemming from a different work injury. *Faulkner Cadillac v. Workers' Compensation Appeal Board (Tinari)*, 831 A.2d 1248 (Pa. Cmwlth.2003), *appeal denied*, 579 Pa. 705, 857 A.2d 680 (2004).

7. Claimant also filed an appeal with the WCAB, arguing that the WCJ erred in failing to mark his March 31, 2004, position statement as an exhibit. The WCAB rejected Claimant's argument, and Claimant did not appeal from the WCAB's decision.

8. Our scope of review of workers' compensation decisions is limited to determining whether constitutional rights were violated, whether the decision is in accordance with the law and whether necessary findings of

preting section 306(c)(23) of the Act as mandating an award of total disability benefits without regard to evidence of Claimant's post-injury earning power.[9] Employer first contends that, because section 306(c)(23) provides that injuries are to be "compensated according to the provisions of" section 306(a), certain principles applicable to section 306(c) of the Law are not applicable to section 306(c)(23). Specifically, Employer maintains that, because awards under section 306(a) are premised upon a loss of earning power, the principle that specific loss benefits are payable *without* regard to a claimant's earning power is not applicable to awards under section 306(c)(23). We cannot agree.

As Employer admits, the remedy provided by section 306(c) is exclusive: "For *all disability* resulting from permanent injuries of the following classes, the compensation shall be *exclusively* as follows...." 77 P.S. § 513 (emphasis added). Thus, a claimant who sustains an injury adjudged compensable under section 306(c) is not entitled to compensation beyond that provided by section 306(c), even though he may be totally disabled by his injury. *Killian v. Heintz Div. Kelsey Hayes,* 468 Pa. 200, 360 A.2d 620 (1976). It always has been recognized that the right to compensation under section 306(c) is measured by the extent of the injury, regardless of the degree of disability. *Morrow v. James S. Murray & Sons,* 136 Pa.Super. 277, 7 A.2d 109 (1939).

Depending on the circumstances, the exclusive nature of the remedy provided by section 306(c) can operate to benefit a claimant or an employer. For example, a claimant who suffers a specific loss but experiences no wage loss can rely on section 306(c) to gain entitlement to benefits. Conversely, where a claimant is receiving ongoing wage loss benefits, the employer can rely on section 306(c) to limit its liability by establishing that the claimant's injury has resolved into a specific loss. In that event, the claimant is entitled only to the weeks of compensation allowed by section 306(c), and the employer receives credit for all wage loss benefits previously paid. *Elliott v. Workmen's Compensation Appeal Board (Daily Industries, Inc.),* 77 Pa.Cmwlth.646, 466 A.2d 789 (1983). Similarly, this limitation applies where a claimant is receiving total disability benefits under section 306(c)(23) at the time of his

---

fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Here, because decisions under section 306(c)(23) of the Act are committed to the discretion of the WCAB, *Symons,* we must affirm the WCAB's decision absent an abuse of that discretion. *See Puhl v. Workers' Compensation Appeal Board (Sharon Steel Corp.),* 724 A.2d 997 (Pa.Cmwlth. 1999) (stating that where the decision to grant or deny a rehearing is within the discretion of the WCAB, the court will reverse only for an abuse of that discretion). An abuse of discretion occurs not merely where the WCAB reaches a decision contrary to the decision that the appellate court would have reached; rather, an abuse of discretion occurs where the WCAB's judgment is manifestly unreasonable, where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Payne v. Workers' Compensation Appeal Board (Elwyn, Inc.),* 928 A.2d 377 (Pa.Cmwlth.2007).

9. Employer also asserts that the WCAB failed to issue a reasoned decision because it did not issue findings of fact or expressly adopt any findings made by the WCJ. However, section 306(c)(23) does not impose a duty upon the WCAB to issue findings of fact where, as here, the WCAB reviews the record in its appellate capacity. We also reject Employer's contention that several of the WCJ's findings of fact are not supported by substantial evidence. Having carefully reviewed the record, we conclude that the testimony of both medical witnesses and Heinlein provides ample support for the WCJ's findings and, in particular, the analysis set forth in the WCJ's Findings of Fact, No. 9.

death from an unrelated cause; his dependents are permitted to receive *only the balance of specific loss payments* that would have been due to the claimant at the time of his death, had he elected to receive specific loss compensation during his lifetime. *See Reed v. Workmen's Compensation Appeal Board,* 499 Pa. 177, 452 A.2d 997 (1982).[10]

Employer asserts that the reference to section 306(a) in section 306(c)(23) entitles Employer to a modification or suspension of benefits based on Claimant's earnings. However, Employer's interpretation of this reference ignores and renders meaningless the prefatory language in section 306(c) announcing that awards under this section are the *exclusive* remedy allowed for the specified permanent injuries. Employer's argument not only requires a suspension of the principles applicable to all claims under 306(c), it also would result in payments of partial disability, compensable under section 306(b) of the Act, 77 P.S. § 512, thereby blurring all distinctions that the legislature established by setting forth three separate schedules of compensation.

 We conclude that, by providing that awards under section 306(c)(23) are "to be compensated" according to section 306(a),[11] the legislature did *not* intend to transform the *award* itself into something

other than an award for a specified permanent bilateral loss, which is governed by long-settled principles that apply to all claims under section 306(c). Instead, we believe that, in declining to limit compensation payable to claimants who suffer these bilateral losses, the legislature recognized that the devastating impact of the loss of *both* hands, arms, feet, legs and eyes is not easily ascertainable. For instance, a claimant who loses one eye loses peripheral vision and depth perception, whereas a claimant who loses both eyes is utterly blind. A claimant who loses one hand may be unable to write legibly, engage in heavy lifting or pursue certain hobbies, whereas a claimant who loses both hands may be unable to feed himself, dress himself, use the toilet without assistance, touch a loved one or wipe away a tear. Thus, in contrast to the aggregate awards established for the loss of two or more fingers or toes, the legislature determined that the compensation for the effects of *these* bilateral losses is presumed to be total disability, to be limited only by the WCAB.

 The conclusion that the legislature did not intend to place a statutory limitation on benefits to claimants who suffer these devastating losses is consistent with Pennsylvania case law. *See, e.g., Reed;*

---

**10.** In *Reed,* the court explained as follows:

[A]lthough employes who have suffered "the loss of both hands or both arms or both feet or both legs or both eyes" are entitled, during their lifetimes, to elect and re-elect to receive either total disability benefits or specific loss benefits, *see Turner, supra,* were we to hold that the right to elect did not survive the employe, we would force all such employes into the position of having to guess, during their lifetimes, whether or not they will live longer than the number of weeks of specific loss compensation to which they would be entitled. This we will not do.

*Reed,* 499 Pa. at 185, 452 A.2d at 1001.

**11.** We note that the benefit rate for compensation payable under *all* subsections of section 306(c) is computed in the same manner as for total disability under section 306(a). *Walton v. Cooper Hosiery Company,* 48 Pa. Cmwlth. 284, 409 A.2d 518 (1980). That is, benefits for specific losses under paragraphs (c)(1) though (c)(22), like compensation for the bilateral losses set forth under paragraph (c)(23), are payable at the rate of sixty-six and two thirds per cent of a claimant's wages, i.e., the rate established for total disability under section 306(a).

*Turner; Lente v. Luci,* 275 Pa. 217, 119 A. 132 (1922); *Estate of Harris; Faulkner Cadillac; Acme Markets Inc. v. Workmen's Compensation Appeal Board (Hopiak),* 127 Pa.Cmwlth.553, 562 A.2d 419 (1989), *appeal denied,* 525 Pa. 648, 581 A.2d 574 (1990); *Shoop;* and *Rutledge v. Daley's Blue Line Transfer Co.,* 152 Pa.Super. 118, 31 A.2d 366 (1943) (holding that the legislature did not intend the reference to section 306(a) to reduce benefits payable for the bilateral injuries identified in section 306(c)(23)).[12]

Finally, Employer contends that, pursuant to our supreme court's decision in *Symons,* the WCAB *must* consider a claimant's earning capacity when rendering decisions under section 306(c)(23). Because the decision in *Symons* rests entirely on the WCAB's *discretion* under section 306(c)(23), we cannot agree.

In *Symons,* our supreme court held that, in drafting section 306(c)(23), the legislature conferred upon the WCAB the discretion to determine whether, in some circumstances, application of the statutory presumption of total disability would not be warranted. The claimant in *Symons* suffered an amputation of both legs and thereafter, participated in an extraordinary rehabilitation program. The program included the use of boots containing an articulating foot, and the claimant eventually became extremely agile and self-sufficient in the use of these boots. The claimant subsequently received new prostheses in the form of artificial legs. After the claimant successfully adapted himself to such a commendable extent, he returned to work as an inspector with his time-of-injury employer. The job the claimant performed was not artificially created for him but was a job in existence prior to the claimant's injury and was performed by other, non-disabled employees. The claimant performed his work with no more assistance than was provided to any other inspector. He drove his own car, parked it on the employer's premises and walked to the job site without assistance. The claimant's job was not temporary but was likely to continue. At the time of the hearing, the claimant was earning more than his pre-injury wage and more than the current wage paid for his pre-injury job.

Based upon its consideration of all of these facts, the WCAB vacated the referee's finding that this claimant was totally disabled and, exercising its statutory authority, substituted its own finding to the contrary. On appeal, our supreme court upheld the WCAB's decision, first setting forth the facts as summarized above, then concluding that the WCAB had exercised its discretion and "otherwise determined" that *this* claimant had been so far rehabilitated that he was not totally disabled by his bilateral specific loss.

The court in *Symons* emphasized that the discretion conferred upon the WCAB was the critical factor in the court's analysis:

> To accept appellant's theory in this case that the loss of both legs entitled him to the continued payment of compensation for total disability despite the fact that the board determined otherwise on the evidence before it would require us to

---

**12.** The legislature's failure to respond to decades of judicial interpretation of section 306(c)(23) confirms that the courts' interpretation reflects the legislature's intent. *See Sun Home Health Visiting Nurses v. Workers' Compensation Appeal Board (Noguchi),* 815 A.2d 1156 (Pa.Cmwlth.) (recognizing the rule of statutory construction that the legislature's failure to amend a statute as interpreted by the court creates the presumption that the court's interpretation is in accordance with the legislature's intent), *appeal denied,* 575 Pa. 705, 837 A.2d 1179 (2003).

ignore the legislative language 'unless the board shall otherwise determine' as well as to violate the rules of statutory construction.

*Id.* at 514, 200 A.2d at 875. The court stated that, "[a]lthough it may be argued that the board cannot find other than total disability where there is a loss of both legs, such argument flies directly in the face of the language of Section 306(c) that the loss constitutes total disability *'unless the board shall otherwise determine.'*" *Id.* at 516, 200 A.2d at 877 (emphasis in original). The court repeated: "The Legislature has vested a discretionary power in the board. *That discretion may be removed or diminished only by the Legislature." Id.* (emphasis added).

 We conclude that the WCAB here correctly interpreted *Symons* as upholding the WCAB's discretionary authority under section 306(c)(23).[13] Exercising that discretion, the WCAB observed that, under Pennsylvania law, specific loss benefits are payable without regard to whether the permanent injury has actually caused a wage loss. *Estate of Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.),* 845 A.2d 239 (Pa.Cmwlth.2004), *appeal denied,* 581 Pa. 708, 867 A.2d 524 (2005). Instead, specific loss benefits are recognized as compensation "for the *loss of use* of designated bodily members rather than for general loss of earning power,"

*Turner v. Jones & Laughlin Steel Corporation,* 479 Pa. 618, 621, 389 A.2d 42, 43 (1978) (emphasis in original), and it is well settled that a claimant's entitlement to specific loss payments is not diminished by his or her receipt of partial disability benefits, total disability benefits or full wages. *Faulkner Cadillac.* Quoting *Shoop,* 149 A.2d at 182 ("We do not think the legislature intended to penalize [a claimant] because he had the industry and ambition to find employment"), the WCAB expressed its belief that the general thrust of section 306(c) in its entirety, and section 306(c)(23) in particular, is that a claimant's earnings are not to be considered in making any award for a specific loss. Indeed, the WCAB's belief is supported by more than half a century of decisions confirming this principle.

 We can hardly conclude that the WCAB abused its discretion by relying on well-settled principles of law. When the court in *Symons* refused to hold that the WCAB erred in considering a claimant's earning capacity, it did so based on the conclusion that the WCAB's discretion under section 306(c)(23) *may not be circumscribed by the courts.* Certainly this rationale cannot be construed to have this court *require* the WCAB to consider any particular factors under section 306(c)(23) absent such direction from the legislature. We conclude that the WCAB had the discre-

---

**13.** To the extent that the WCAB's opinion implies that the WCAB is *prohibited as a matter of law* from considering a claimant's earning capacity under section 306(c)(23), we note that such a conclusion is contrary to *Symons'* holding that the WCAB's discretion may not be circumscribed by the courts. Pursuant to *Symons,* courts may not dictate what the WCAB must or must not consider in determinations arising under section 306(c)(23). We stress, however, that the WCAB made clear in this case that it was exercising its discretionary authority under section 306(c)(23) to determine that Claimant is total-

ly disabled. See the WCAB's opinion at page eight ("As Dr. Cowan credibly testified that Claimant's injury was permanent and that Claimant sustained a complete loss of his right hand and his left hand for all practical intents and purposes, the Board will exercise its discretion pursuant to section 306(c)(23) to determine that Claimant remains totally disabled and that his corresponding benefits should continue") and page nine ("moreover, pursuant to *Symons* ... it is within the Board's discretion in any event to determine that Claimant's permanent total disability and corresponding benefits should continue").

tionary authority to determine that Claimant is totally disabled, without regard to, or in spite of, his earning capacity. Further, in light of the record in this case, we conclude that the WCAB did not abuse that discretion in making its determination.

Accordingly, we affirm.

## ORDER

AND NOW, this 22nd day of July, 2008, the order of the Workers' Compensation Appeal Board, dated January 8, 2007, is hereby affirmed.

## DISSENTING OPINION BY Judge COHN JUBELIRER.

For the first time, this Court, in the majority opinion in this case, interprets Section 306(c)(23) of the Workers' Compensation Act (Act)[1] to allow a bilateral loss claimant to continue to receive total disability benefits, even though he has returned to work and is receiving wages.[2] *See generally* Torrey & Greenberg, Workers' Compensation: Law and Practice § 5:142 (West, 2002) (Torrey & Greenberg) ("No appellate authority exists which would permit a claimant to return to work, and have earning power, yet continue to

receive temporary total disability payments under the presumption of [Section 306(c)(23)].") Because I believe that the majority misinterprets Section 306(c)(23) of the Act and gives the Workers' Compensation Appeal Board (WCAB) unbridled discretion, which raises the strong possibility of similarly situated persons being treated differently, I must respectfully dissent.

Initially, however, I wish to state that this opinion is in no way intended to diminish the significance of the tragic injury that Claimant sustained while working for Employer. Claimant is certainly entitled to be compensated for his injury in a manner that is consistent with the Act, and I commend Claimant for his desire to work and contribute to the workforce, despite his unfortunate injury.

Employer's main contention on appeal is that the WCAB erred in interpreting Section 306(c)(23) of the Act as mandating an award of total disability benefits without considering Claimant's post-injury earning power. Section 306(c)(23) of the Act provides that "[u]nless the [WCAB] shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability, to be compensated according to the provisions of [Section 306(a) of the Act, 77 P.S. § 511]."[3] 77 P.S. § 513(23).

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513(23).

2. After thoroughly reviewing our prior case law, I believe that there is no authority that currently allows a bilateral loss claimant who has returned to work and is earning wages following an injury to continue receiving total disability benefits under Section 306(c)(23).

3. Section 306(a) of the Act provides as follows:
 The following schedule of compensation is hereby established:
 (1) For total disability, sixty-six and two-thirds per centum of the wages of the in-

jured employe as defined in section 309 beginning after the seventh day of total disability, and payable for the duration of total disability, but the compensation shall not be more than the maximum compensation payable as defined in section 105.2. Nothing in this clause shall require payment of compensation after disability shall cease. If the benefit so calculated is less than fifty per centum of the Statewide average weekly wage, then the benefit payable shall be the lower of fifty per centum of the Statewide average weekly wage or ninety per centum of the worker's average weekly wage.

The majority rejects Employer's contention and adopts the WCAB's interpretation of Section 306(c)(23) of the Act, concluding that "the WCAB had the discretionary authority to determine that Claimant is totally disabled, without regard to, or in spite of, his earning capacity."[4] *Allegheny Power v. Workers' Compensation Appeal Board (Cockroft)*, 954 A.2d 692, 702–03 (Pa.Cmwlth., No. 242 C.D. 2007, filed July 22, 2008). In reaching this conclusion, the majority opines that the General Assembly did not intend the reference to Section 306(a) of the Act, which is contained in Section 306(c)(23), to place a limitation on the benefits available to claimants who sustain bilateral losses.[5] *Id.* at 700–01. Ac-

---

(2) Nothing in this act shall require payment of total disability compensation benefits under this clause for any period during which the employe is employed or receiving wages.

77 P.S. § 511.

4. In its opinion, the majority notes that, before the WCAB, "Employer asserted that Claimant's specific losses are compensable exclusively under Sections 306(c)(1) (hand) and 306(c)(2) (forearm) of the Act, 77 P.S. §§ 513(c)(1) and (c)(2), so that Claimant is entitled to an aggregate of 705 weeks of total disability compensation." *Allegheny Power v. Workers' Compensation Appeal Board (Cockroft)*, 954 A.2d 692, 695 (Pa.Cmwlth., No. 242 C.D. 2007, filed July 22, 2008). The majority then states that, "[a]lthough Employer continues this assertion on appeal, we note that Employer has waived this issue by stipulating that Claimant's injuries fall within Section 306(c)(23) of the Act." *Id.* at 695 n. 3. However, I respectfully disagree with the majority's assessment. While Employer may have stipulated that Claimant's injuries initially fell within Section 306(c)(23) of the Act, which entitled Claimant to a presumption that he was totally disabled, Employer is not foreclosed from now arguing that Claimant's total disability has resolved into specific losses compensable exclusively under Section 306(c)(1) and 306(c)(2) of the Act.

5. According to the majority, to interpret the reference that is made to Section 306(a) in Section 306(c)(23) as requiring consideration of a claimant's earning power would ignore and render meaningless the prefatory language in Section 306(c), which provides that awards under that section are the *exclusive* remedy for the specified permanent injuries. *Allegheny Power v. Workers' Compensation Appeal Board (Cockroft)*, 954 A.2d 692, 700 (Pa. Cmwlth., No. 242 C.D. 2007, filed July 22, 2008). However, the majority fails to recognize that Section 306(c)(23) is unlike any oth-er provision in Section 306(c). That is, while Section 306(c) generally provides for the payment of specific loss benefits for a particular number of weeks without regard to earning capacity, Section 306(c)(23) allows a claimant who sustains a bilateral loss to receive total disability benefits in accordance with Section 306(a). Thus, the specific loss benefits provided for in Section 306(c)(1)-(22) are not the exclusive remedy available to a bilateral loss claimant. Instead, a bilateral loss claimant has the option of electing to receive disability benefits in accordance with Section 306(a) or receiving specific loss benefits for the loss of each body part in accordance with Section 306(c)(1)-(22). *See Turner v. Jones & Laughlin Steel Corp.*, 479 Pa. 618, 627, 389 A.2d 42, 46 (1978).

The majority further opines that the interpretation advanced by Employer would require a suspension of the principles applicable to all claims under Section 306(c) and would require the payment of partial disability benefits, thus blurring the distinctions that the General Assembly established by setting forth three separate schedules of compensation. *Allegheny Power v. Workers' Compensation Appeal Board (Cockroft)*, 954 A.2d 692 (Pa.Cmwlth., No. 242 C.D. 2007, filed July 22, 2008). However, I disagree.

There is no reason why the principles that have traditionally been held to be applicable under Section 306(c) would not continue to apply to Section 306(c)(1)-(22). As previously mentioned, Section 306(c)(23) is a unique provision, which specifically provides for total disability benefits to be paid in accordance with Section 306(a). It is this express reference which provides the justification for treating Section 306(c)(23) differently than the other portions of Section 306(c). Additionally, by using the language "disability" in Section 306(c)(23), the General Assembly expressed its intent to blur the general distinctions between the different schedules of

cording to the majority, this interpretation is supported by *Reed v. Workmen's Compensation Appeal Board,* 499 Pa. 177, 452 A.2d 997 (1981); *Turner v. Jones & Laughlin Steel Corporation,* 479 Pa. 618, 389 A.2d 42 (1978); *Lente v. Luci,* 275 Pa. 217, 119 A. 132 (1922); *Estate of Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.),* 845 A.2d 239 (Pa.Cmwlth. 2004); *Faulkner Cadillac v. Workers' Compensation Appeal Board (Tinari),* 831 A.2d 1248 (Pa.Cmwlth.2003); *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak),* 127 Pa.Cmwlth.553, 562 A.2d 419 (Pa.Cmwlth.1989); *Shoop v. Chambersburg Baking,* 189 Pa.Super. 20, 149 A.2d 179 (Pa.Super.1959); and *Rutledge v. Daley's Blue Line Transfer Co.,* 152 Pa.Super. 118, 31 A.2d 366 (Pa.Super.1943).

However, I respectfully disagree with the majority's interpretation of Section 306(c)(23) of the Act because it fails to account for the express language of Section 306(a). In 1996, the General Assembly amended Section 306(a) of the Act to state that *"[n]othing in this act shall require payment of total disability compensation benefits under this clause for any period during which the employe is employed or receiving wages."* Act of June 24, 1996, P.L. 350, § 4, *amending* 77 P.S. § 511(2) (emphasis added). Through this amendment, the General Assembly made it clear that no provision of the Act, *including Section 306(c)(23),* is intended to provide total disability benefits to a claimant for a period of time during which he is employed or receiving wages. Because *Reed, Turner, Lente, Acme Markets, Inc., Shoop,* and *Rutledge* were decided *prior* to the 1996 amendment to Section 306(a), the majority's reliance on those cases is misplaced. Additionally, while *Estate of Harris* and *Faulkner Cadillac* were

decided after the 1996 amendment to Section 306(a), those cases did not address whether Section 306(a) of the Act applies in this situation and, therefore, are not relevant to this inquiry.

When the limiting language contained in Section 306(a) of the Act is taken into consideration, the legal significance of Section 306(c)(23) becomes evident. Section 306(c)(23) of the Act creates a statutory presumption that a claimant who sustains "the loss of both hands or both arms or both feet or both legs or both eyes" is temporarily totally disabled; it does not automatically entitle a bilateral loss claimant to lifelong total disability benefits. *See* 77 P.S. § 513(23); *see also* Torrey & Greenberg § 5:13 (Section 306(c)(23) "does not presume lifelong permanent disability. Instead, the total disability is presumed to be temporary and is to be paid unless the [WCAB] shall otherwise determine.") An employer may rebut the presumption of total disability that Section 306(c)(23) of the Act creates by proving that the bilateral loss claimant is once again employed or receiving wages following his injury. *See* 77 P.S. 513(23); 77 P.S. § 511(2); *see also* Torrey & Greenberg § 5.142 ("[A] [modification or suspension] petition would presumably be filed if the claimant effected a return to work and had earning power.") Thus, where a bilateral loss claimant is employed and receiving wages following his injury, the WCAB's discretion must be exercised consistent with Section 306(a). *See* 77 P.S. § 513(23); 77 P.S. § 511(2).

Applying these principles to the present case, Claimant was initially entitled to the presumption of temporary total disability provided for under Section 306(c)(23) because he sustained a bilateral loss of his hands. However, Employer successfully rebutted that presumption by presenting

compensation as applied to bilateral loss claimants.

evidence that Claimant has returned to work and is receiving wages. Therefore, I believe that the WCAB committed an error of law and/or abused its discretion by concluding that Claimant remains totally disabled, even though he has returned to work and is earning wages.

Moreover, I believe that the majority's interpretation is incorrect because it gives the WCAB unbridled discretion. In *Symons v. National Electric Products, Inc.*, 414 Pa. 505, 512–14, 200 A.2d 871, 875–76 (1964), the Supreme Court upheld the WCAB's decision finding that a claimant who had sustained a bilateral loss was no longer totally disabled after he returned to work and was earning more than his pre-injury wages. Given the WCAB's prior willingness to consider a claimant's post-injury earning power under Section 306(c)(23) in *Symons*, it is very troubling that the WCAB, in this case, has determined earning power to be entirely irrelevant. If the WCAB is permitted to change its interpretation of Section 306(c)(23) in each case without any explanation as to why it is departing from its prior interpretation, the result will be that similarly situated individuals will be treated differently. Perhaps the best example of this can be seen by comparing *Symons*, where it was determined that a claimant who had sustained a bilateral loss was no longer totally disabled in light of his post-injury earnings, with the present case, where it was determined that Claimant continues to be totally disabled even though he is now employed and receiving wages. Clearly,

no administrative agency or branch thereof should be afforded such unfettered discretion. If, as the majority opinion implies, there are no limits on the WCAB's discretion under Section 306(c)(23), then this Court's review in such cases is illusory.

For the reasons discussed above, I would reverse the WCAB's decision and remand the matter to the WCAB to assign to the WCJ to hold a hearing and make findings as to the amount of Claimant's post-injury earnings and to determine whether Claimant is now entitled to partial disability benefits or specific loss benefits.[6] Accordingly, I must dissent.

President Judge LEADBETTER and Judge LEAVITT join in this dissenting opinion.

---

**6.** Generally, an employee, who, following an injury, returns to work at wages less than his pre-injury wages is entitled to partial disability benefits for a period of up to five-hundred weeks. Section 306(b)(1), 77 P.S. § 512(1). However, under Section 306(c)(23), the WCAB has the discretion to determine that a bilateral loss claimant is entitled to specific loss benefits where those benefits prove to be

more advantageous. *Turner v. Jones & Laughlin Steel Corp.*, 479 Pa. 618, 627, 389 A.2d 42, 46 (1978); *see also* Torrey & Greenberg § 5.142 ("The employee, however, can elect to receive two specific loss payments, and thus, he or she may receive continuing benefits even though such employee has returned to work.").