# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Phillip Wilson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1015 C.D. 2018 |
| | : | SUBMITTED: November 2, 2018 |
| Workers' Compensation Appeal | : | |
| Board (Flagger Force), | : | |
| Respondent | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                           FILED:  February 7, 2019

Phillip Wilson (Claimant) petitions this Court for review of the July 11, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the workers' compensation judge (WCJ), awarding Claimant benefits for lost wages and medical treatment for the period of June 7, 2016 through October 26, 2016. Claimant challenges the WCJ's conclusion that he had fully recovered from his work injury on October 26, 2016 and asks this Court to reverse the WCJ's decision in that regard.

## Background

Claimant was employed by Flagger Force (Employer) as an advanced crew leader directing traffic at construction sites.  Notes of Testimony (N.T.), 7/21/16, at 8. Claimant drove to and from work sites in a truck provided by Employer.  *Id.* at 11.  On June 6, 2016, while driving home from a work site, Claimant was rear-ended by a sedan, which hit the trailer Claimant was towing at the time.  *Id.* at 25-26.  Claimant was thrown forward "a little bit" by the impact.  *Id.* at 26.  Damage to Employer's

vehicle was minimal and Claimant was able to drive the vehicle home. *Id.* at 15, 30. Claimant immediately reported the motor vehicle accident (MVA) to Employer. *Id*. at 15.

Claimant developed a headache as a result of the accident, but he initially declined any medical treatment. *Id.* at 29-30. Once home, Claimant elected to seek treatment at a hospital for back and neck pain, as well as a "pounding" headache. *Id.* at 33. Claimant was treated and released with instructions to follow up with his family doctor. *Id.* Claimant did not return to work after June 6, 2016. *Id.* at 17.

On June 14, 2016, Claimant filed a claim for lost wages and medical expenses under the Workers' Compensation Act (Act),[1] for injuries to his neck and back allegedly sustained as a result of the June 6, 2016 MVA. Certified Record (C.R.), Item No. 2, Claim Petition. Employer issued a Notice of Compensation Denial (NCD) on June 20, 2016, on the basis Claimant had not suffered a work injury. N.T., 7/21/16, Ex. J-1. Employer's Answer denying the allegations in Claimant's petition was filed on June 22, 2016. C.R., Item No. 4, Employer's Answer.

Hearings were held before the WCJ on July 21, 2016 and March 30, 2017. Claimant testified on his own behalf and presented the deposition testimony of his treatment provider, Dr. Teri Gartenberg. Employer submitted the deposition testimony of its witness, Dr. Ira Sachs.

Claimant testified at the July 21, 2016 hearing as to the circumstances of the MVA and the treatment provided for his injuries. In describing the MVA, Claimant initially stated another driver "rammed the back of [his] truck." N.T., 7/21/16, at 10. Later in his testimony, Claimant clarified that the truck itself was not hit, only the trailer behind the truck. *Id.* at 28. Claimant "was thrown frontwards a little bit" by the impact. *Id.* at 26. Claimant was not bruised by his seatbelt, and he did not hit any part of the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

2

truck with his body. *Id.* The truck's airbags did not deploy. *Id.* Claimant described Employer's vehicle as "chipped [a] little bit," and he related that repairs were unnecessary. *Id.* at 15. Both vehicles involved in the MVA were drivable. *Id.* at 30-31.

Claimant testified he declined an offer for medical assistance from the responding police officer because he wanted to go home. *Id.* at 29. After returning home, however, Claimant elected to go to the hospital. *Id.* at 33. Claimant was treated for his neck and back pain with medication and instructed to contact his family doctor. *Id.* Thereafter, Claimant sought treatment at Philadelphia Pain Management (PPM). *Id.* at 35. He primarily treated with Dr. Gartenberg, a chiropractor, although he saw other providers as well. *Id.* at 35.

Claimant acknowledged having been treated previously at PPM for injuries sustained in a 2014 MVA and a 2008 work accident.[2] *Id.* at 35. However, prior to the June 6, 2016 MVA, he was not suffering any pain from those accidents and he was capable of performing all his regular work duties. *Id.* at 21. As of the date of the hearing, Claimant testified his neck pain was "not as bad" as it had been, but the pain in his back prevented him from returning to his regular work duties. *Id.* at 41.

At the subsequent March 30, 2017 hearing, Claimant testified he continued to suffer from pain radiating from his head down his neck. N.T., 3/30/17, at 14. Claimant testified Dr. Gartenberg treated this pain with electrical stimulation and exercise. *Id.* at 18-19. Another treatment provider, Dr. John Bowden, "crack[ed]" Claimant's back and neck once per month, and prescribed Claimant Percocet for pain. *Id.* at 19-20. Claimant testified he no longer suffered headaches except "once in a blue moon." *Id.* at 22. He described his neck and back pain as a "7" on a scale of 1 to 10, with 10 being

---

[2] Claimant's employer at the time of the 2008 work injury was not identified.

the worst pain. *Id.* at 20. Claimant lived alone and was capable of dressing himself, cleaning, and cooking. *Id.* at 23.

Claimant testified he wished to return to work, but he did not know what work that would entail. *Id.* at 25. He felt his back and neck pain, which he described as "terrible," prevented him from returning to his regular work duties, which involved standing for approximately 13 hours holding a stop sign. *Id.* at 14, 25. Claimant's sole source of income as of the March 30, 2017 hearing was unemployment compensation. *Id.* at 15, 24.

Dr. Gartenberg testified by deposition on January 25, 2017. She has been a licensed chiropractor since 1992. N.T., 1/25/17, at 5. Dr. Gartenberg treated Claimant for the June 6, 2016 work injury as well as injuries sustained in a 2014 MVA. *Id.* at 7. She did not treat him for the 2008 work injury, but had access to treatment records related to that incident. *Id.* at 8.

Dr. Gartenberg first treated Claimant for the June 6, 2016 work injury on June 10, 2016. *Id.* at 8. Claimant's chief complaints were headaches with intermittent blurred vision and constant low back pain. *Id.* at 9. He rated his pain as a 7 out of 10. *Id.* Dr. Gartenberg did not treat Claimant for the headaches and blurred vision; rather, she referred him to a different treatment provider for those complaints. *Id.* at 10. After performing a physical examination, Dr. Gartenberg diagnosed Claimant with a "cervical acceleration/deceleration injury Grade II, lumbar sprain/strain, lumbar disc syndrome, lumbar sacral radiculitis, [and] myospasm posttraumatic cephalgia." *Id.* at 12.

Dr. Gartenberg employed a variety of treatments, including spinal manipulation, positive high voltage stimulation, hot and cold packs, and exercise. *Id.* at 13. Cervical and lumbar magnetic resonance images (MRIs) were taken on August 4, 2016, the results of which indicated a "persistent herniation at L5, S1" as well as a herniation at

the C6-7 level. *Id.* at 13-14. Based on the results of the MRIs, Dr. Gartenberg referred Claimant for an orthopedic consult with Dr. Bowden. *Id.* at 15. Claimant continued to treat at PPM once or twice a month. *Id.* at 20. This care consisted of chiropractic manipulation, exercise, muscle stimulation, and application of heat. *Id.* at 20-21.

In preparation for the January 25, 2017 deposition, Dr. Gartenberg reviewed Claimant's medical records, which included her own medical reports and those of other providers at PPM, as well as the MRI scans taken following Claimant's 2008 work injury and the 2014 MVA. *Id.* at 16. The findings of a November 2008 MRI of Claimant's lumbar spine were relatively normal, indicating degenerative changes and no herniation. *Id.* at 28-29. A November 2014 MRI study indicated herniation at the L5, S1 level. *Id.* at 36. The C6-7 herniation indicated by the August 2016 MRI was considered a new finding, as compared to the 2014 MRI study. *Id.* at 14.

Notes from an October 11, 2016 examination at PPM indicated Claimant's headaches had ceased. *Id.* at 43. His range of motion for the cervical spine was normal but produced pain. *Id.* at 45. His low back was "pretty close to normal," but also produced pain. *Id.* He exhibited no signs of spasm or nerve damage in cervical or lumbar areas. *Id.* at 45-46. A January 20, 2017 examination report by Dr. Meers, another chiropractor at PPM, supported Dr. Gartenberg's diagnosis of a cervical acceleration/deceleration injury. *Id.*, Ex. C-3 at 2.

Dr. Gartenberg opined, within a reasonable degree of chiropractic certainty, that Claimant's injuries were caused by the June 6, 2016 MVA. *Id.* at 19. She agreed that Claimant's past medical history made him more susceptible to injuries, even from a low-impact accident. *Id.* at 48, 53. As of the date of her deposition, Dr. Gartenberg was of the opinion that Claimant could return to work at light to moderate duty, with no heavy lifting, driving shorter distances, and being able to take breaks as needed. *Id.* at 20.

Dr. Sachs testified by deposition on February 23, 2017. He has been in practice as an orthopedic surgeon since 1985. N.T., 2/23/17, at 6. Dr. Sachs performed an independent medical exam (IME) of Claimant on October 26, 2016. *Id.* at 9. On that date, Claimant presented with complaints of neck and back pain and headaches. *Id.*

In forming his opinion, Dr. Sachs reviewed Claimant's pre- and post-injury MRI studies, hospital records from the date of the June 6, 2016 MVA, and the records from Claimant's medical providers, including those from PPM and Dr. Bowden. *Id.* at 13.

Dr. Sachs compared the 2008, 2014, and 2016 MRI scans of Claimant's lumbar region. *Id.* at 13-15. He testified that the 2008 MRI indicated a bulging disc at the L5, S1 region which then appeared herniated in the 2014 MRI. *Id.* The L5, S1 herniation appeared unchanged in the 2016 MRI, and the C6-7 herniation was a new finding. *Id.* at 13-14. Dr. Sachs opined that the minor nature of Claimant's MVA would not usually cause a disc herniation. *Id.* at 16-17. Dr. Sachs testified he saw no evidence of bleeding or swelling in Claimant's 2016 MRI that would indicate Claimant's herniation was caused by a traumatic injury. *Id.* at 16. As a result, Dr. Sachs could not relate the C6-7 herniation to Claimant's June 6, 2016 MVA. *Id.* at 17.

As to the physical examination performed on October 26, 2016, Dr. Sachs testified that Claimant exhibited no distress while sitting, he was able to stand and walk without a limp, and his motor strength going up on his heels and toes was excellent. *Id.* at 23-24. When asked to bend over, Claimant could only flex his lumbar spine 30 degrees due to complaints of pain. *Id.* at 24. However, when lying on the examination table, Claimant was able to sit upright, thus flexing his lumbar spine to 90 degrees, without issue. *Id.* Dr. Sachs opined that Claimant should have been able to flex "while standing when he could do it against gravity." *Id.* Claimant expressed no pain when his cervical spine was examined. *Id.* at 26. While Claimant exhibited low back pain when raising his legs straight, and reported "a little" pain in his neck and lumbar spine

6

upon examination, the vast majority of tests performed during the October 26, 2016 examination were negative and revealed normal findings. *Id.* at 24-27. Dr. Sachs found no evidence from a clinical standpoint of any posttraumatic cervical and lumbar strain or sprain, disc syndrome, radiculopathy, or neurologic compromise. *Id.* at 27. Dr. Sachs opined that, within a reasonable degree of medical certainty, Claimant had resolved any and all injuries to his back and was capable of returning to work without restrictions. *Id.* at 27-28.

On cross-examination, Dr. Sachs acknowledged that Claimant might have been in less pain during the examination if he had taken his prescribed medications; however, Claimant had not mentioned taking any medication prior to the examination. *Id.* at 33-34.

After reviewing the testimonies of Claimant and Drs. Gartenberg and Sachs, the WCJ concluded Claimant presented sufficient, credible evidence to prove that he suffered a work injury on June 6, 2016. WCJ Decision at 13. As to whether Claimant had fully recovered from his work injury, the WCJ resolved any conflicting evidence in favor of Employer. *Id.* at 10.

The WCJ found Claimant's testimony "mostly not credible." WCJ Finding of Fact (F.F.) No. 7. His testimony regarding prior cervical and low back injuries was deemed credible as it was corroborated by medical records. *Id.* The WCJ accepted Claimant's testimony that he suffered a work-related injury that initially prevented him from returning to full duty work; however, the WCJ found that Claimant had recovered from that injury as of October 26, 2016. *Id.* Claimant's testimony regarding the severity of the work injury and his ongoing disability was rejected along with his complaints of continuing pain, as his testimony was inconsistent with medical records which indicated his headaches had resolved and he had a normal examination of his

cervical spine and a near-normal examination of his lumbar spine in October 2016. *Id.* Claimant's testimony was rejected to the extent it conflicted with that of Dr. Sachs.

Dr. Gartenberg's testimony was found to be credible only in part. F.F. No. 8. To the extent Claimant suffered a work-related injury, Dr. Gartenberg was deemed credible. *Id.* However, her testimony regarding the severity of Claimant's injury, and whether the accident caused a herniation of Claimant's C6-7 disc, was rejected, and the WCJ rejected all opinions of Dr. Gartenberg where they conflicted with those of Dr. Sachs. *Id.* The WCJ noted that Dr. Gartenberg is a chiropractor and she refers patients who require orthopedic consultation to other practitioners. *Id.* The WCJ also relied on the results of Dr. Gartenberg's October 11, 2016 examination of Claimant, which indicated that Claimant's headaches had resolved, that his cervical spine was normal, and that his lumbar spine was "pretty close" to normal. *Id.* This evidence indicated Claimant was improving from a soft tissue injury on October 11, 2016 and Dr. Sachs's opinion that he had fully recovered on October 26, 2016 was deemed credible. *Id.*

In addition to finding the testimony of Dr. Sachs credible because it comported with Claimant's medical records, the WCJ also based his determination on Dr. Sachs's status as a board-certified orthopedic surgeon with extensive experience in treating patients with injuries similar to Claimant's. F.F. No. 9. Dr. Sachs did not dispute the fact that Claimant sustained some sort of injury from the MVA, and any treatment provided was necessary and reasonable. F.F. No. 8. The results of Dr. Sachs's IME, during which Claimant reported no cervical pain, were consistent with the report from Claimant's October 11, 2016 examination at PPM. F.F. No. 9. The WCJ determined that much of the disagreement between experts lay in the interpretation of Claimant's MRI records and the perceived severity of Claimant's injury. *Id.* Dr. Sachs, as an orthopedic surgeon, was found to be the better and more credentialed expert to opine on such matters. *Id.*

8

In light of these credibility determinations, the WCJ granted in part Claimant's claim petition and awarded him benefits for wage loss and medical expenses through October 26, 2016. F.F. No. 11. While Claimant presented sufficient, credible evidence that he suffered a work-related injury, the WCJ found he did not have an ongoing disability as of October 26, 2016. WCJ Conclusion of Law No. 2. Claimant appealed to the Board, which affirmed. This appeal followed.

## Issues

On appeal,[3] Claimant argues that the WCJ abused his discretion, capriciously disregarded evidence, and that the termination of Claimant's benefits was not supported by substantial, competent evidence. Claimant requests this Court reverse the WCJ's determination that Claimant was fully recovered from his work injury as of October 26, 2016.

## Discussion

### A. Abuse of Discretion

First, Claimant argues the WCJ abused his discretion when he determined the outcome of the case prior to hearing testimony from the parties. This conduct by the WCJ is based on two alleged "off the record" discussions in which the WCJ ordered the parties to engage in mediation and suggested the matter settle. Claimant's Br. at 10-11. Claimant argues these discussions indicate bias on the part of the WCJ, who had already decided the matter in Employer's favor. As a consequence, Claimant contends, the medical evidence supporting Claimant's petition was not fully considered by the WCJ.

---

[3] Our review of an order of the Board is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

9

Employer rejects any claim that the WCJ predetermined the outcome. At no time did Claimant, or his counsel, request the WCJ recuse himself or express any concerns regarding the WCJ's impartiality. Rather, Employer notes that Claimant raised the issue only after he received an unfavorable decision, and the WCJ clearly reviewed and summarized all the evidence when rendering his decision.

An abuse of discretion occurs where the judgment of the WCJ is manifestly unreasonable, where the law is not applied, or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Allegheny Power Serv. Corp. v. Workers' Comp. Appeal Bd. (Cockroft)*, 954 A.2d 692, 698 n.8 (Pa. Cmwlth. 2008). Here, Claimant alleges bias on the part of the WCJ.

It is well settled that this Court may consider only the facts which have been duly certified in the record on appeal. *HYK Constr. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009, 1017 (Pa. Cmwlth. 2010). Consequently, we will not entertain Claimant's allegations of "off the record" misconduct and bias which are supported by nothing more than the arguments in his appellate brief. As to matters which do appear of record, at the conclusion of the March 30, 2017 hearing, the WCJ asked whether the parties had engaged in mediation. N.T., 3/30/17, at 31. When counsel indicated mediation had been attempted previously, the following exchange took place.

> [WCJ]: How about one more try at voluntary?
>
> [Employer's Counsel]: Your Honor, we extended the last offer so at this time - - - .
>
> [WCJ]: Well, I'm going to recommend it. So you let me know if that's a no. I'll send you an email. All right. Thank you.

*Id.* at 31-32.

We are hard pressed to discern how this brief discussion, in which Employer expresses reluctance with further attempts at mediation and the WCJ suggests giving it another try, evidences bias against Claimant. Further, given that Claimant was awarded benefits, Claimant's assertion that the WCJ predetermined the case in favor of Employer strains credulity. The fact that Claimant's benefits ceased on October 26, 2016, upon a finding he was fully recovered from his work injury does not render this matter a wholesale victory for Employer.

Having reviewed the record in its entirety, we perceive no evidence to support Claimant's argument that the WCJ's decision was the result of bias.

### B. *Capricious Disregard of Evidence*

Next, Claimant argues the WCJ capriciously disregarded the evidence to support a predetermined outcome. Claimant acknowledges that substantial evidence exists to support portions of the WCJ's decision. He argues, however, that the WCJ ignored testimony which could not logically be overlooked. This testimony, taken from Dr. Gartenberg's deposition, supported a finding that Claimant had not fully recovered from his work injury. Claimant does not cite to any specific testimony in the record which supports his argument, but he maintains the WCJ failed to set forth adequate reasons for accepting or rejecting the evidence and testimony.

Claimant further suggests the WCJ's failure to consider all evidence presented resulted in a decision that was not reasoned, as required by Section 422(a) of the Act, which provides, in pertinent part, that:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. § 834.

11

Employer denies the WCJ capriciously disregarded evidence and his decision was insufficiently reasoned; Claimant's argument to the contrary is merely a disguised attempt at having this Court reweigh the evidence and overturn the WCJ's credibility determinations.

Capricious disregard means a deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 n.12 (Pa. 2002). While a WCJ is free to accept, in whole or in part, the testimony of any witness, he may not capriciously disregard evidence. *Reed v. Workers' Comp. Appeal Bd. (Allied Signal, Inc.)*, 114 A.3d 464, 470 (Pa. Cmwlth. 2015). A WCJ is not, however, required to address in his written adjudication all the evidence presented. *Roth v. Workmen's Comp. Appeal Bd. (Armstrong World Indus.)*, 562 A.2d 950, 951 (Pa. Cmwlth. 1989). A WCJ must only "make findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Green v. Workers' Comp. Appeal Bd. (US Airways)*, 155 A.3d 140, 148 (Pa. Cmwlth. 2017).

Claimant admits in his brief that the WCJ set forth a detailed description of the evidence. Yet, Claimant persists in arguing the WCJ capriciously disregarded "other evidence," the nature of which is unspecified in his brief, and suggests the WCJ wholly disregarded Dr. Gartenberg's testimony. Claimant's Br. at 9. In furtherance of his argument, Claimant cites Dr. Sachs's skepticism that the cervical herniation was caused by the work injury. He maintains the WCJ should have considered this a "refusal [] to answer [C]laimant's counsel's questions about the cause of these new abnormalities." Claimant's Br. at 16.

In short, Claimant argues the WCJ ignored evidence favoring his position. We disagree. His insistence that the WCJ ignored entirely the testimony of Dr. Gartenberg is readily contradicted by the WCJ having found her credible in part. The WCJ's

12

summary of the testimony was extremely thorough, and this Court is hard pressed to identify any evidence which the WCJ failed to discuss in his decision.

With regards to Claimant's argument that the WCJ's decision was not reasoned, "a decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In a case where the WCJ "has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible . . . could be sufficient to render the decision adequately 'reasoned.'" *Id.* at 1053. Resolution of conflicting medical testimony, however, where the medical experts testified solely by deposition, cannot be supported by a mere announcement that one expert was deemed more credible than another. *Id.* "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.*

Here, the WCJ did not merely summarize the testimony of the expert witnesses and make a credibility determination. Rather, he summarized the testimony of each witness, then carefully explained his credibility determinations. The WCJ found Dr. Sachs more credible in part because of his experience and expertise as an orthopedic surgeon when compared to Dr. Gartenberg's experience as a chiropractor. This expertise placed Dr. Sachs in a better position to interpret Claimant's MRI scans. Further, Dr. Sachs's testimony was deemed consistent with Claimant's medical records and, specifically, with the report from Claimant's October 11, 2016 examination, which suggested Claimant was recovering from his work injury.

13

As the WCJ articulated the objective bases for his credibility determinations, we reject Claimant's argument that his decision was not sufficiently reasoned as required by Section 422(a) of the Act.

### C. Substantial Evidence

Finally, Claimant argues the WCJ's findings are not supported by substantial evidence. This argument is based on Dr. Sachs's alleged failure to specifically identify the work injury suffered by Claimant, and Dr. Sachs's use of qualifying statements, such as "at this time" and "related to." Claimant's Br. at 23. Claimant suggests that the use of such qualifying statements also renders Dr. Sachs's testimony equivocal and incompetent. Claimant reiterates his claims of bias and asserts that the WCJ's reliance on this incompetent testimony, and simultaneous rejection of Dr. Gartenberg's testimony, signifies the efforts of the WCJ to "sculpt the decision to reflect" a predetermined outcome. *Id.* at 24.

Employer responds that a review of the evidence presented clearly shows Claimant failed to meet his burden of proving he suffered from an ongoing disability after October 26, 2016, and this conclusion is supported by substantial, competent evidence of record.

First, we address Claimant's argument that Dr. Sachs failed to appropriately identify and accept Claimant's injury.

Claimant is correct that, with regard to a *termination* of benefits, a medical expert must, at a minimum, acknowledge an accepted or established work injury. *Sarmiento-Hernandez v. Workers' Comp. Appeal Bd. (Ace Am. Ins. Co.)*, 179 A.3d 105, 110 (Pa. Cmwlth. 2018) (emphasis added). This requirement prevents a party from attempting to re-litigate the nature of an accepted injury at a subsequent proceeding. *To v. Workers' Comp. Appeal Bd. (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003).

14

The fallacy of Claimant's argument lies in the fact that, as of the date of Dr. Sachs's deposition, Claimant was not receiving any benefits that were subject to termination. Within a week of Claimant having filed his claim petition, Employer issued an NCD. Employer never accepted the work injury, and the existence and nature of Claimant's work injury was still being actively litigated. As a result, any failure of Dr. Sachs to specifically identify Claimant's alleged work injury is of no moment.

Having dispensed with Claimant's first grievance regarding Dr. Sachs's testimony, we turn to his argument that Dr. Sachs's testimony was equivocal and incompetent.

Medical testimony is equivocal and thus incompetent if, after a review of the medical expert's entire testimony, it is found to be based on mere possibilities. *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post-Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). Medical testimony will be found unequivocal if the medical expert, after providing a foundation, testifies in his professional opinion that he believes a certain fact or condition exists. *Id.* at 731. The law does not require every utterance on a medical subject to be certain, positive, and without reservation or exception. *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011). A medical witness's use of words such as "probably," "likely," and "somewhat" will not render an opinion equivocal so long as the testimony, read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed. *Id.*

Claimant fails to cite the specific testimony of Dr. Sachs which he finds problematic. Instead, Claimant suggests that Dr. Sachs's use of the phrases "related to" and "at this time" act to disqualify his opinions. Claimant further argues Dr. Sachs failed to rely on the MRI scans and reports and based his opinion solely on the physical examination performed on October 26, 2016.

We fail to grasp how the phrases to which Claimant objects could disqualify Dr. Sachs's testimony. Indeed, it is difficult to imagine how Dr. Sachs could render an opinion on the source of Claimant's injuries without indicating whether he believed they were or were not "related to" Claimant's June 6, 2016 MVA. It is equally logical that Dr. Sachs would limit the application of his opinions to the date on which they were rendered.

As to Dr. Sachs's alleged rejection of the diagnostic studies, this assertion is easily refuted by our review of the testimony at issue. Dr. Sachs discussed Claimant's three MRI scans, and the reports of those scans, over the course of several pages of testimony. N.T., 2/23/17, at 13-17. He recognized, for example, that Claimant had preexisting herniation in his lumbar region and that Claimant's August 2016 MRI scan indicated a more recent herniation in his cervical spine. *Id.* at 44-45. He did not agree, however, with a report by Dr. Bowden that Claimant suffered from radiculopathy. *Id.* at 44. As to the cervical herniation, that injury clearly occurred after the November 2014 MRI and before the August 2016 MRI. As the August 2016 MRI contained no evidence of other trauma, such as swelling and bleeding, Dr. Sachs would not attribute that injury to the June 6, 2016 MVA. *Id.* at 15-17. Dr. Sachs did not deny the possibility Claimant suffered any injury from the June 6, 2016 MVA; he simply did not believe the MVA caused Claimant's cervical herniation. Rather, as to any claimed injuries sustained in the June 6, 2016 MVA, Dr. Sachs believed they had resolved as of October 26, 2016. *Id.*, Ex. No. 2, IME Report, at 7.

At no time did Dr. Sachs recant his opinion or belief that Claimant had recovered from any injuries sustained in the June 6, 2016 MVA. Claimant's argument to the contrary is completely without merit, and it is clear that Claimant's allegations of equivocation are based on his dislike of, and disagreement with, Dr. Sachs's medical opinions.

16

The WCJ, as fact finder, has exclusive province over questions of credibility and evidentiary weight, and the WCJ's findings will not be disturbed if supported by substantial competent evidence. *Westinghouse Elec. Corp. v. Workers' Comp. Appeal Bd. (Weaver)*, 823 A.2d 209, 215 (Pa. Cmwlth. 2003). It is not this Court's function to reweigh the evidence and to determine whether the WCJ made the most reasonable and probable findings that could have been rendered. *Id.* We do not agree that Dr. Sachs's testimony was equivocal or incompetent, and we cannot in our appellate function reweigh the evidence or overturn the WCJ's credibility determinations.

For the reasons stated, the WCJ's findings that Claimant suffered a work-related injury on June 6, 2016 and was fully recovered from that injury on October 26, 2016 are supported by substantial, competent evidence. Accordingly, we affirm the order of the Board.



ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phillip Wilson,                              :
                Petitioner        :
                                         :
      v.                                   :   No. 1015 C.D. 2018
                                         :
Workers' Compensation Appeal                 :
Board (Flagger Force),                       :
             Respondent       :

O R D E R

AND NOW, this 7th day of February, 2019, the Workers' Compensation Appeal Board's Order, dated July 11, 2018, is hereby AFFIRMED.

ELLEN CEISLER, Judge