IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Reed Shaffer Construction and : <br>
Donegal Mutual Insurance Company, : <br>
               Petitioners : <br>
                : <br>
        v. : <br>
                : <br>
Glynn Smith (Workers' Compensation : <br>
Appeal Board), :   No. 1003 C.D. 2021 <br>
            Respondent :   Submitted: March 4, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge <br>
               HONORABLE MICHAEL H. WOJCIK, Judge <br>
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY <br>
JUDGE COVEY                              FILED: July 6, 2022

Reed Shaffer Construction and Donegal Mutual Insurance Company (collectively, Employer) petition this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) August 23, 2021 order affirming the WC Judge's (WCJ) April 7, 2020 decision that denied Employer's Petition to Suspend Compensation Benefits (Suspension Petition).[1] The sole issue before this Court is whether the WCJ erred by denying the Suspension Petition despite the evidence that Glynn Smith (Claimant) sustained a 50% loss of use of three right hand fingers without any disability separate and apart from those three injured fingers. After review, this Court affirms.

---

[1] Section 413 of the Act of June 2, 1915, P.L. 736 (Act), *as amended*, 77 P.S. § 772, authorizes a WCJ to suspend WC benefits upon proof that an injured employee's disability has temporarily or finally ceased.

On March 28, 2018, Claimant sustained lacerations to his right middle, ring, and small fingers during the course and scope of his employment with Employer as a full-time carpenter.[2] On April 5, 2018, Employer issued a Notice of Temporary Compensation Payable (NTCP) acknowledging the March 28, 2018 injury as "[l]aceration [[c]ut, scratches, abrasions, superficial wounds, calluses, wound by tearing]," and began paying Claimant wage loss benefits at a weekly rate of $512.50. Reproduced Record (R.R.) at 72a; *see also* R.R. at 73a. Thereafter, the NTCP converted to a Notice of Compensation Payable.

On March 5, 2019, Employer filed the Suspension Petition, therein alleging that, since Claimant suffered specific loss of use of only 50% of his right third, fourth, and fifth fingers, without any injuries or disabilities separate and apart from those three injured digits, Employer was only responsible for paying 58 weeks of specific loss benefits through May 10, 2019. *See* R.R. at 4a. Employer also requested a supersedeas. *See* R.R. at 5a.

The WCJ conducted hearings on April 23 and October 29, 2019. Based on evidence presented at the April 23, 2019 hearing, by April 29, 2019 Interlocutory Order, the WCJ denied Employer's supersedeas request.[3] *See* R.R. at 8a-10a. On April 7, 2020, the WCJ denied Employer's Suspension Petition because Employer failed to sustain its burden of proving that Claimant suffered a specific loss limited to only 50% use of his third, fourth, and fifth digits of his right hand, without injuries

---

[2] Claimant had been a carpenter for over 30 years. *See* Reproduced Record (R.R.) at 22a. As of March 28, 2018, he had worked for Employer doing residential and commercial carpentry for a little over one year. *See id*. On that date, while cutting a two-by-four with a table saw, the board "kicked back towards [him] and [his] hand kind of just followed the lumber through the saw blade." R.R. at 24a. Claimant is left-handed. *See* R.R. at 23a.

[3] On May 7, 2019, the WCJ issued an Interlocutory Order, stating: "After review and consideration of the subject matter which is reviewed in correspondence from counsel for [Employer] dated April 29, 2019, the denial of the supersedeas request in the context of the pending Suspension Petition, as reflected in the Interlocutory Order circulated April 29, 2019, is affirmed." R.R. at 13a.

separate and apart from his specific loss. *See* WCJ Dec. at 26. The WCJ found that Claimant's injuries also included ongoing right hand, wrist, and forearm pain that rendered him physically incapable of performing his pre-injury job. Employer appealed to the Board which affirmed the WCJ's decision on August 23, 2021. Employer appealed to this Court.[4]

Employer has been paying Claimant total disability benefits,[5] but filed the Suspension Petition asserting that, since Claimant's March 28, 2018 work injury was limited to a specific loss of his three digits on his right hand, his WC benefits must cease when the amount of benefits Employer has paid equals the amount to which Claimant would have been entitled for that specific loss. In this appeal, Employer argues that the WCJ erred by denying the Suspension Petition despite Employer's uncontroverted medical evidence that Claimant only sustained a 50% loss of use of three right fingers, without any disability separate and apart from those three injured fingers.

Initially, "Section 306 of the [WC] Act (Act),[6] 77 P.S. §§ 511, 512[,] 513, recognizes three types of disability: total disability, partial disability[,] and permanent disability, commonly known as 'specific loss.'"[7] *Est. of Harris v.*

---

[4] On September 15, 2021, Employer filed an application for supersedeas, which the Board denied on October 20, 2021. On October 22, 2021, Employer filed a petition for supersedeas in this Court that Claimant opposed. Following argument, this Court denied Employer's petition for supersedeas on January 12, 2022. *See* January 12, 2022 Memorandum and Order.

"Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1172 n.3 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).

[5] The Court observes that the NTCP does not reference a specific loss, *see* R.R. at 72a-73a, and there does not appear to have been a prior ruling that Claimant sustained a specific loss of use of his right third, fourth, and fifth fingers.

[6] Act of June 2, 1915, P.L. 736, 77 P.S. §§ 1-1041.4, 2501-2710.

[7] "[T]he term 'disability' is a term of art in the [WC] context. Generally, 'disability' is synonymous with loss of earning power resulting from a work-related injury." *Whitfield v.*

3

*Workers' Comp. Appeal Bd. (Sunoco, Inc. & ESIS/SIGNA)*, 845 A.2d 239, 241 (Pa. Cmwlth. 2004) (footnotes omitted). "'Specific loss' does not appear in the Act; it is the term popularly used to describe the disability payments to be made where a claimant has suffered a permanent injury." *Id*. at 242 n.6. "A specific loss is either (1) the loss of a body part by amputation or (2) the permanent loss of use of an injured body part for all practical intents and purposes."[8] *Miller v. Workers' Comp. Appeal Bd. (Wal-Mart)*, 44 A.3d 726, 728 (Pa. Cmwlth. 2012) (quoting *Jacobi v. Workers' Comp. Appeal Bd. (Wawa, Inc.)*, 942 A.2d 263, 264 n.1 (Pa. Cmwlth. 2008)).

Section 306(c) of the Act provides a schedule to compensate injured employees for specific losses. *See* 77 P.S. § 513. Because "specific loss benefits are recognized as compensation 'for the *loss of use* of designated bodily members rather than for general loss of earning power,' *Turner v. Jones & Laughlin Steel Corp*[.], . . . 389 A.2d 42, 43 ([Pa.] 1978) (emphasis in original)," they "are payable without regard to whether the permanent injury has actually caused a wage loss." *Allegheny Power Serv. Corp. v. Workers' Comp. Appeal Bd. (Cockroft)*, 954 A.2d 692, 702 (Pa. Cmwlth. 2008).

---

*Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 612 (Pa. Cmwlth. 2018).

[8] A specific loss requires more than just limitations upon an injured worker's occupational activities; a loss of use for all practical intents and purposes requires a more crippling injury than one that results in a loss of use for occupational purposes. However, it is not necessary that the injured body part be one hundred percent useless in order for the loss of use to qualify as being for all practical intents and purposes.

*Miller v. Workers' Comp. Appeal Bd. (Wal-Mart)*, 44 A.3d 726, 728 (Pa. Cmwlth. 2012) (quoting *Jacobi v. Workers' Comp. Appeal Bd. (Wawa, Inc.)*, 942 A.2d 263, 267-68 (Pa. Cmwlth. 2008)). Evidence necessary to prove that a loss is permanent for all intents and purposes "hinges on the findings of fact in each case, including those regarding credibility, the degree of the injury, and the degree to which a claimant may continue to use the body part." *Kemps v. Steets (Workers' Comp. Appeal Bd.)*, 257 A.3d 1271, 1278 (Pa. Cmwlth. 2021).

4

Moreover,

> [i]t is well established that in matters involving specific loss claims, a claimant who sustains an injury that is compensable under Section 306(c) of the Act . . . (relative to specific loss calculations), is not [also] entitled to compensation beyond that specified in that section[,] even though he may be totally disabled by the injury.

*Pocono Mountain Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 914 (Pa. Cmwlth. 2015) (quoting *Sharon Steel Corp. v. Workers' Comp. Appeal Bd. (Frantz)*, 790 A.2d 1084, 1088 (Pa. Cmwlth. 2002)). This is because "[i]njuries, including those that result in a loss of earning power, that normally flow from the specific loss injuries are considered compensated under specific loss benefits." *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 121 (Pa. Cmwlth. 2016).

However, "[a]n exception to the general rule provides that a claimant may also receive benefits for injuries that are separate and distinct from those that flow from the specific loss injury." *Kemps v. Steets (Workers' Comp. Appeal Bd.)*, 257 A.3d 1271, 1277 (Pa. Cmwlth. 2021). Thus, "if a claimant suffers an injury that is separate and apart from a specific loss of a body part that results in a loss of earning power, a claimant may receive compensation under Section 306(a) of the Act, 77 P.S. § 511[] (related to total disability), or Section 306(b) of the Act, 77 P.S. § 512[] (related to partial disability), in addition to benefits for the specific loss of a body part." *Lindemuth*, 134 A.3d at 121.

Here, Employer presented the deposition testimony of orthopedic surgeon Steven E. Kann, M.D. (Dr. Kann) in support of its Suspension Petition. Dr. Kann conducted an independent medical evaluation (IME) of Claimant on January

9, 2019. Dr. Kann testified that he reviewed Claimant's medical records,[9] obtained Claimant's history, took right hand X-rays, and physically examined Claimant. *See* R.R. at 173a-175a, 202a-206a. Dr. Kann recalled Claimant confirming at the IME that his work injury was limited to the third, fourth, and fifth digits of his right hand, and complaining of stiffness and decreased range of motion in those fingers, but Claimant did not report any complaints about his right hand or wrist. *See* R.R. at 173a-174a, 187a.

During his examination, Dr. Kann observed that Claimant had limited range of motion in the third, fourth, and fifth fingers of his right hand, full range of motion in his right thumb and index finger, and normal nerve function of all five digits. *See* R.R. at 175a, 184a-185a. Claimant's X-rays confirmed healed fractures and diffuse preexisting arthritis in Claimant's right hand, and Dr. Kann determined that Claimant's grip was 60 pounds in his right hand (as opposed to 120 pounds in his left hand).[10] *See* R.R. at 175a-176a, 185a-187a. Dr. Kann confirmed that Claimant has "arthrofibrosis, which means stiffness of the joints, and adhesions of the extensor tendons" due to his March 28, 2018 work injury, which has "resulted in permanent stiffness of digits 3, 4[,] and 5 of the right hand." R.R. at 176a; *see also* R.R. at 182a, 188a, 204a. Dr. Kann opined that Claimant could frequently lift/carry up to 25 pounds (and occasionally up to 50 pounds) with both hands, Claimant is able to "rarely" climb ladders, R.R. at 206a, Claimant "could not lift greater than 15 pounds with [his] right hand[, and his] right hand could be used for grasping of large objects, but he would not be able to manipulate small objects with the right hand."

---

[9] Dr. Kann subsequently reviewed Rafael Diaz-Garcia, M.D.'s January 7, 2019 report, and Stephen J. Thomas, M.D.'s April 10, 2019 report, that were not available to Dr. Kann at the IME. *See* R.R. at 207a-208a. He declared that neither report altered his conclusion. *See* R.R. at 180a-181a, 207a-208a.

[10] Dr. Kann explained that a person's non-dominant hand (here, the right) will typically have 80% of the strength of the dominant hand (here, the left). *See* R.R. at 176a.

R.R. at 177a; *see also* R.R. at 178a, 182a, 206a. Dr. Kann stated that further treatment will not change Claimant's condition because his right hand condition will never resolve. *See* R.R. at 182a, 188a-189a. Notwithstanding, Dr. Kann concluded that Claimant "is capable of working 40 hours a week plus overtime in a modified[-]duty capacity utilizing [his] right hand as a helper hand." R.R. at 161a.

Dr. Kann testified that patients who suffer the types of injuries Claimant did typically experience resulting stiffness. *See* R.R. at 174a. He declared in his IME report: "It is my opinion that [Claimant's] injury was isolated to the [third], [fourth], and [fifth] digit[s,] and there is no injury separate and apart, thus there is no injury to the right wrist or the remainder of the hand that would be attributable to the isolated table saw injury to digits 3, 4 and 5." R.R. at 206a. By February 12, 2019 letter in response to Employer's inquiry "[w]hether or not [Claimant] had suffered a specific loss of use either 100% or 50% of digits 3, 4 and 5, and whether there was any injury separate and apart in regard to the right hand[,]" Dr. Kann confirmed, with a reasonable degree of medical certainty:

> Given the fact that [Claimant] was able to achieve 60 pounds of grip strength in the right hand and that digits 3, 4[,] and 5 were neurovascularly intact with normal sensation and normal canillary refill, but [Claimant] had a profound deficit in active and passive range of motion of digits 3, 4[,] and 5, it is my opinion that [Claimant] has lost 50% use of digits 3, 4[,] and 5 of the right hand and this 50% loss of use is permanent. In addition, it is my opinion there is no injury separate and apart.

R.R. at 207a. Dr. Kann reiterated that opinion in his deposition. *See* R.R. at 178a-180a.

Claimant testified that, after he was injured on March 28, 2018, he was transported to the Jameson Hospital emergency room where he was told to go to Allegheny General Hospital in Pittsburgh, where Rafael Diaz-Garcia, M.D. (Dr.

7

Diaz-Garcia) conducted extensive repair surgery, including inserting hardware in his middle and ring fingers, the next day. *See* R.R. at 25a-26a, 74a-94a. Claimant described that he underwent physical therapy thereafter. *See* R.R. at 26a-27a, 41a-42a. He recalled that Dr. Diaz-Garcia removed the hardware on April 30, 2018, but, due to significant tightening and stiffening in his hands, Dr. Diaz-Garcia performed a second surgical procedure on August 3, 2018, after which Claimant again underwent intensive physical therapy until October or November 2018. *See* R.R. at 27a-28a, 36a, 40a-43a, 75a, 78a-80a. On January 7, 2019, Dr. Diaz-Garcia discharged Claimant from his care with a right hand 20-pound lifting restriction, reporting: "It is unsafe for [Claimant] to climb a ladder. He cannot return to the previous company he was working for." R.R. at 85a; *see also* R.R. at 28a-29a, 37a, 43a-44a.

Claimant explained that his counsel referred him to orthopedic surgeon Stephen J. Thomas, M.D. (Dr. Thomas), who examined Claimant on April 10, May 1, and June 26, 2019. *See* R.R. at 36a-37a, 68a, 95a-100a, 140a-141a. Claimant further recalled Dr. Thomas referring him to Orientee Ditano, M.D. (Dr. Ditano), who specializes in complex hand surgery, for a second opinion. *See* R.R. at 112a-113a. Claimant described that Dr. Ditano examined him on August 20, 2019, and ordered a computerized tomography (CT) scan of his right hand. *See* R.R. at 63a, 68a. According to Dr. Ditano's report, Claimant had significant stiffness in his third, fourth, and fifth fingers and he could not make a full fist. *See* R.R. at 166a. Dr. Ditano concluded that Claimant "is disabled[,]" and he did not believe that any additional surgical intervention would make Claimant's situation better. *Id.* Claimant asserted that Dr. Ditano did not release him to return to his pre-injury job. *See* R.R. at 64a.

Claimant displayed his hand for the WCJ, who observed that Claimant's small and ring fingers were in a permanently bent position and there was

8

significant swelling in his right ring finger. *See* WCJ Dec. at 5; *see also* R.R. at 29a-30a, 64a. Claimant pointed out that his laceration extends from the base of his small finger at his hand to the top of his middle finger. *See* R.R. at 67a-68a. Claimant demonstrated that severe stiffness and range of motion problems in all three damaged fingers allow him only to make a half fist, and he cannot touch his injured fingers to his right palm. *See* WCJ Dec. at 5; *see also* R.R. at 30a-31a, 34a, 64a-65a. Claimant described that he experiences occasional tingling in his injured fingers, but that he has "pretty severe stiffness" in those fingers that extends to the corner of his hand at his wrist. R.R. at 33a; *see also* R.R. at 34a, 64a.

Claimant articulated that his pre-injury job consisted of all phases of construction, including sawing, cutting, lifting, and regularly climbing ladders. *See* R.R. at 22a-23a. He also used manual and electrical tools, including saws, screw guns, hammers, and claws. *See* R.R. at 23a. In addition, Claimant had to lift, move, and carry various items, such as full drywall buckets, plywood, drywall, and heavier lumber like two-by-tens and two-by-twelves. *See* R.R. at 22a. Claimant pronounced that his injuries have rendered him unable to grasp and use a hammer, screwdriver, and other objects (boxes, etc.), and he can no longer safely climb a ladder. *See* R.R. at 32a, 44a-45a, 64a-65a. Claimant stated that he has not worked since March 28, 2018. *See* R.R. at 34a, 62a. He represented that the condition of his hand did not change from the April 2019 WCJ hearing to the October 2019 WCJ hearing; he still has stiffness and a lack of range of motion that extends from his wrist across the back of his hand, and no doctor has released him to return to his pre-injury carpentry job. *See* R.R. at 35a, 64a-66a. Claimant declared that he cannot return to his pre-injury job. *See* R.R. at 66a.

Claimant acknowledged that Dr. Diaz-Garcia's surgical intervention was only for his three fingers, not his hand or wrist, and Dr. Diaz-Garcia's treatment focused on the three fingers. *See* R.R. at 39a-40a, 43a. He explained that physical

9

therapy extended to an uninjured finger next to the three injured ones because it, too, had gotten stiff due to immobilization of the other three. *See* R.R. at 38a-39a.

Claimant also presented the deposition testimony of Dr. Thomas, who first examined Claimant on April 10, 2019. *See* R.R. at 97a-100a. At that time, Claimant complained to Dr. Thomas of stiffness in all of the fingers of his right hand (not his thumb), and decreased range of motion in the joints of his index and long fingers on that hand.[11] *See* R.R. at 107a, 109a-110a. Dr. Thomas also observed that Claimant had decreased right hand grip strength. *See* R.R. at 119a, 121a-122a. Dr. Thomas obtained an imaging study of Claimant's right hand that revealed deformities of the third and fourth fingers and mild, preexisting arthritis. *See* R.R. at 110a. Dr. Thomas reported Claimant's injury as a "[c]rushing injury of right wrist and hand," R.R. at 99a, because "the bone [wa]s broken, the skin [wa]s crushed, the soft tissues [we]re crushed, [and] the extensor tendons [we]re not only cut but they [were] macerated from the pressure going through the hand . . . [.]" R.R. at 117a; *see also* R.R. at 112a-113a. Dr. Thomas prescribed anti-inflammatory medication and cream to help decrease Claimant's swelling and resultant discomfort, and directed him to return in three weeks. *See* R.R. at 110a-111a.

Dr. Thomas recalled that Claimant's complaints and condition were unchanged at Claimant's May 1, 2019 visit, and noted that Claimant had right hand stiffness. *See* R.R. at 95a-96a, 111a. He recollected that Claimant had not obtained the anti-inflammatory medication or cream because "[Employer was] not paying for it[,]" R.R. at 111a, so he gave Claimant a heating pad to provide Claimant relief and to decrease swelling. *See* R.R. at 112a.

Dr. Thomas summarized that, during Claimant's follow-up visit on June 26, 2019, Claimant reported the heating pad had afforded him some relief, but

---

[11] Dr. Thomas acknowledged that his April 10, 2019 report erroneously referenced that Claimant was right-handed. *See* R.R. at 99a, 108a.

10

he was still unable to grasp a hammer or other tools necessary to perform his pre-injury job. *See* R.R. at 113a, 140a-141a. Dr. Thomas referred Claimant to Dr. Ditano, who evaluated Claimant on July 11, 2019, recommended a CT scan of Claimant's right hand[12] to consider whether Claimant would benefit from an MCP joint release[13] of his third, fourth, and fifth fingers, and Dr. Ditano "was going to keep [Claimant] off work." R.R. at 114a; *see also* R.R. at 112a-115a, 119a, 122a-123a, 142a-143a. Dr. Thomas did not examine Claimant again after referring Claimant to Dr. Ditano. *See* R.R. at 119a, 123a.

Dr. Thomas acknowledged that Claimant did not mention his right wrist on Dr. Thomas's intake report, and that his treatment records did not reference right wrist or hand fractures or abnormalities. *See* R.R. at 121a, 123a, 126a. However, Dr. Thomas opined:

> The force that goes through your fingers with a radial saw and a two-by-four, to cause that amount of damage, puts an excessive amount of pressure through the wrist and the forearm, let alone the extensor tendons that were repaired and revised by [Claimant's] original hand surgeon; starting at the elbow, they go by the wrist, and into the hand. So they're shortened at the fingers, they're surely irritated by the wrist. So I don't think a wrist complaint is uncommon at all.

R.R. at 116a-117a.

Dr. Thomas agreed with Dr. Kann's assessment that Claimant lost 50% of the use of this third, fourth, and fifth fingers on his right hand, but disagreed that Claimant did not have an injury separate and apart from the three digits. *See* R.R. at 117a-118a. Rather, Dr. Thomas concluded that, "by definition, with the amount of

---

[12] The CT scan results were not available at the time of Dr. Thomas's deposition. *See* R.R. at 122a.

[13] Dr. Thomas described that MCP joint release surgery consists of "limited incisions where [the surgeon] release[s] the adhesions or the scar tissue around the joints to increase motion." R.R. at 114a; *see also* R.R. at 115a.

force that it takes to create this trauma, there's more than just those fingers that are injured." R.R. at 118a. Accordingly, Dr. Thomas declared with a reasonable degree of medical certainty that Claimant

> had a crush injury to his hand which involved the third, fourth, and fifth fingers with resulting [] pain in the wrist/forearm area, because the extensor tendons that are involved in the hand start at the lateral aspect of the humeral epicondyle and become shortened at the hand, and then bother the entire wrist and arm.

R.R. at 119a; *see also* R.R. at 120a, 123a-124a.

When asked: "Doctor, looking through your notes, is it fair to say that you're [sic] diagnosis throughout your treatment has been a crush injury of the right wrist and hand?" Dr. Thomas responded: "Yes." R.R. at 119a; *see also* R.R. at 96a, 99a, 141a. He confirmed that, although his three examinations focused primarily on Claimant's three damaged fingers, they also included Claimant's right wrist and hand. *See* R.R. at 96a, 99a, 124a, 141a. Dr. Thomas further agreed with Dr. Kann that Claimant could use his right hand as a helper hand. *See* R.R. at 125a.

At the October 29, 2019 WCJ hearing, the WCJ admitted into evidence Dr. Ditano's August 20, 2019 report, in which Dr. Ditano summarized that Claimant still experienced stiffness in his injured fingers and could not make a full fist, and diagnosed Claimant with right hand stiffness and crushing injuries to his right wrist and hand. *See* R.R. at 165a-166a, 218a. Dr. Ditano concluded:

> At this point, [Claimant] is pain free and he is disabled. I don't believe that surgical treatment would make his issue much better. He may get some better motion at the MCP joint, but it wouldn't do more than that. I told [Claimant] we can given [sic] it a try if he would like to not have surgery at this point. Follow up with me if he changes his mind.

R.R. at 166a.

12

Based on the record evidence, the WCJ made the following relevant finding:

1. After review and consideration of the testimony and evidence of record, along with the arguments of counsel for the respective parties, that which has been accepted supports the denial of the Suspension Petition. The testimony and evidence supportive of this determination follows[:]

The most compelling reasons supporting the denial of [Employer's] request [sic] relief are [Claimant's] age of 61 years (as reported during the course of the litigation on the Suspension Petition), and his occupation as a carpenter. Work as a carpenter requires the extensive use of one's hands, inclusive of relatively fine (neurological) motor skills. Given the nature and extent of the injury to [Claimant's] hand, his contention that he continues to sustain disability separate and apart to the specific loss of use of the digits involved is accepted, and is supported by the considerations reviewed above, as well as the testimony of Dr. [] Thomas, his treating orthopod. Dr. Thomas indicated that [Claimant] would have difficulty grasping a hammer, and indicated that [Claimant] has continued to remain subject to stiffness and pain in the injured area of his hand, as well as up into his wrist and arm. As such, Dr. Thomas concluded that [Claimant] has continued to remain disabled from his pre-injury employment, as he does not have the ability to grasp a hammer or other tool[s] needed to perform his job duties, and also indicated that [Claimant's] pain and stiffness has extended considerably beyond the injured area of his hand, up into his wrist and arm, and these conclusions comport very reasonably with the nature and extent of [Claimant's] injury to his right hand. Dr. Thomas'[s] opinions and conclusions are supported by his clinical findings, as described by him in his deposition testimony. These include his clinical description of the injuries sustained to [Claimant's] right hand, as well as medical and surgical treatment which has followed.

Dr. [] Kann, [Employer's] consulting orthopod, has indicated that he believes [Claimant] is only subject to the loss of 50% of the third, fourth, and fifth digits of his right

13

hand, thus supporting [Employer's] contention that [Claimant] has sustained loss of use of these digits in this amount. Dr. Kann's conclusion is certainly reasonable, but has been deemed less credible and persuasive than the opinions and conclusions of Dr. Thomas, again, for the reasons reviewed by him in his deposition testimony, as well as those reviewed above.

WCJ Dec. at 25-26 (R.R. at 233a-234a).

The WCJ summarized:

Claimant's credible testimony and the medical evidence of record demonstrate that Claimant's injury goes beyond just his three fingers. That evidence shows that Claimant's crush injury involves an injury separate and apart going down into Claimant's hand and wrist. As such, Claimant suffered a work injury on March 28, 2018[,] separate and apart from the specific loss, and as such, the Suspension Petition must fail.

WCJ Dec. at 22 (R.R. at 230a).

The WCJ concluded:

[Employer] has failed to sustain its burden of proof in the context of its Suspension Petition . . . , and accordingly said [Suspension P]etition has been denied.

More specifically, [Employer] has failed to sustain its burden of establishing that [Claimant] has experienced specific loss of use only of 50% of his third, fourth, and fifth digits of his right hand, as the testimony of [Claimant] has been deemed credible, and accepted, as it comports very reasonably with the nature and extent of the injuries sustained by him, as well as the opinions and conclusions of Dr. Thomas[.]

WCJ Dec. at 26 (R.R. at 234a).

The law is well established:

The WCJ is the fact[-]finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh

14

the evidence or the WCJ's credibility determinations.[14] In addition, it is solely for the WCJ, as the fact[-]finder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*W. Penn Allegheny Health Sys. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (quoting *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted)).

Moreover,

"[f]or purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the [fact-finder]'s necessary findings, those findings will not be disturbed on appeal."[15] *Verizon* [*Pa.*] *Inc. v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). When "performing a substantial evidence analysis, this

---

[14]   Specifically, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. [Thus, u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal."[FN]16 *Pa. Uninsured Emp'rs Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006)).

> [FN]16 Capricious disregard "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considered and rejected the evidence. *Id.*

*Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bromley)*, 161 A.3d 446, 462 (Pa. Cmwlth. 2017).

[15] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018) (quoting *B.B. Kim's Mkt., Inc. v. Dep't of Health, Div. of Women, Infants & Child. (WIC)*, 762 A.2d 1134, 1135 (Pa. Cmwlth. 2000)).

> Court must view the evidence in a light most favorable to the party who prevailed before the fact-finder." *WAWA v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). Further, when determining whether substantial evidence exists to support a finding of fact, this Court must give to the party in whose favor the appealed decision was decided "the benefit of all inferences that can logically and reasonably be drawn from the evidence." *B.J.K. v. Dep*[*'t*] *of Pub*[.] *Welfare*, 773 A.2d 1271, 1276 (Pa. Cmwlth. 2001).

*Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018). In the instant matter, the Board affirmed the WCJ's decision on the basis that substantial record evidence supported the WCJ's factual findings. *See* Board Op. at 4-6 (R.R. at 250a-252a).

In order to succeed on its Suspension Petition, Employer had to prove that Claimant's work injury was limited to the 50% loss of use of the third, fourth, and fifth digits of his right hand. The WCJ concluded, based on the record evidence he deemed credible, that Employer failed to meet its burden. Employer's appeal essentially is an attack on the WCJ's credibility determinations. Because the WCJ's credibility determinations were clearly supported by the record, this Court may not disturb them. *See Verizon Pa. Inc*.; *see also Pocono Mountain Sch. Dist.* Moreover, giving Claimant "the benefit of all inferences that can logically and reasonably be drawn from the evidence[,]" *Obimak Enter.*, 200 A.3d at 126 (quoting *B.J.K.*, 773 A.2d at 1276), as we must, this Court holds that substantial evidence supported the WCJ's findings that Claimant suffered disability due to the loss of use of his right wrist and hand separate and apart from his accepted work injuries. *See Pocono Mountain Sch. Dist.* Accordingly, the WCJ did not err by denying Employer's Suspension Petition.

16

Based on the foregoing, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge


Judge Fizzano Cannon and Judge Dumas did not participate in the decision in this matter.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Reed Shaffer Construction and     :
Donegal Mutual Insurance Company,     :
         Petitioners     :
                            :
         v.     :
                            :
Glynn Smith (Workers' Compensation     :
Appeal Board),     :     No. 1003 C.D. 2021
         Respondent     :

## O R D E R

AND NOW, this 6th day of July, 2022, the Workers' Compensation Appeal Board's August 23, 2021 order is affirmed.

_____

ANNE E. COVEY, Judge